# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-1659

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JUAN MELENDEZ, JR.,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 01 CR 30172—**William D. Stiehl**, *Judge.*

———————

ARGUED FEBRUARY 17, 2004—DECIDED MARCH 24, 2005

———————

Before RIPPLE, KANNE, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* A jury convicted Juan Melendez, Jr., of conspiring to distribute and conspiring to possess with intent to distribute in excess of 1000 kilograms of marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count 1) and aiding and abetting the possession of marijuana with intent to distribute in excess of 100 kilograms in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(B) (Count 2). Melendez waived his right to a jury trial on a criminal forfeiture count brought under 21 U.S.C. § 853. Following the guilty verdict, Melendez was sentenced and

a $15 million forfeiture was ordered. In this appeal, Melendez challenges the sufficiency of the conspiracy evidence, the trial court's failure to *sua sponte* give a buyer-seller jury instruction, and his sentence and forfeiture. We affirm in all respects save one: in light of the Supreme Court's recent decision in *United States v. Booker*, 125 S. Ct. 738 (2005), and this court's decision in *United States v. Paladino*, No. 03-2296, 2005 WL 435430, at *7 (7th Cir. Feb. 25, 2005), we order a limited remand regarding Melendez's sentence.

## I. History

The evidence introduced at trial included testimony from eight cooperating witnesses and other extensive corroborating documentary evidence. When this evidence is viewed in the light most favorable to the government, as it must be at this time, it shows that the activities of the conspirators began in the early 1990s and demonstrates Melendez's ongoing role as a marijuana supplier.

By 1991, Scott Vilmer and Tony Torbellin had participated in several transactions involving large quantities of marijuana: Vilmer would purchase marijuana from Torbellin in Dallas, Texas, transport the drugs back to St. Louis, Missouri, and would then resell the drugs for a large profit in and around St. Louis and East St. Louis, Illinois. Over time, Vilmer enlisted numerous friends and family members to work as drivers and to transport the drugs. He turned over the resale responsibilities in the St. Louis area to William Corbitt. Three other men—Bryan Garrett, Steve Logsdon, and Brad Logsdon—also worked as resellers for Vilmer.

Throughout the 1990s, Melendez served as one of Torbellin's suppliers in Texas, charging approximately $450

or $500 per pound of marijuana. Torbellin, for a fee of $5000, also stored drugs on occasion for Melendez. At one point, Melendez offered to supply marijuana directly to Vilmer, but Vilmer refused.

In 1998, Torbellin absconded with approximately $200,000 of Vilmer's money, which had been earmarked for drug purchases. Torbellin subsequently ceased supplying Vilmer. But in September 2000, after an apparent reconciliation, Torbellin phoned Vilmer and informed him that Melendez was in Indiana and was looking to sell some marijuana. Vilmer, Melendez, and others met to negotiate the purchase of 800 pounds of marijuana. Vilmer, with the assistance of others, picked up the drugs from a truck stop and made partial payment to Melendez by giving a specified amount of money to Torbellin. The balance of the money owed was paid in two or three subsequent payments.

Then, in January 2001, Melendez phoned Vilmer to set up another marijuana transaction. Eventually 1600 pounds of marijuana were sold to Vilmer, transported, and broken down into ten-pound blocks by Vilmer's associates. Again Melendez was paid only a portion of the agreed-upon price at the time of the transaction.

A final marijuana transaction took place in November 2001. Vilmer, along with two associates, drove to Dallas to pick up the marijuana. Vilmer met with Melendez, picked up the drugs, and drove the drugs back to a farmhouse in Illinois. At the farmhouse, the marijuana was unloaded and broken down into ten-pound blocks.

Based upon anonymous tips, beginning around 1998, Illinois law enforcement and the Drug Enforcement Agency ("DEA") were alerted to the Vilmer organization's drug activities. The government obtained the cooperation of James Myers, a trusted insider in the Vilmer operation. As a result of the information Myers provided, the farmhouse was raided, the individuals involved were arrested, and ap-

proximately 337 kilograms of marijuana were seized. This brought an end to the Vilmer drug ring.

The government presented the preceding evidence at trial and also produced Melendez's brother-in-law, Rene Olvera. Olvera testified that he had transported marijuana for Melendez beginning in 1995. According to Olvera, he transported the drugs to Dallas, met up with the buyer, and then rode with the buyer to either Louisiana or Arkansas. Olvera would then collect the payment and transport the cash back to Melendez. He estimated that he transported drugs for Melendez more than ten times, and that the weight of each load was approximately 1000 to 1800 pounds. On one occasion, Olvera accompanied Melendez to Torbellin's home where Melendez collected money from Torbellin.

On October 23, 2002, a federal grand jury indicted Melendez, along with nineteen co-defendants, for various drug and drug-related charges. All defendants except Melendez and one other agreed to plead guilty and to cooperate with the government in exchange for reduced sentences. Melendez's jury trial commenced on November 12, 2002, and concluded with a guilty verdict on November 25. The jury also returned a special verdict finding the amount of marijuana involved in the Count 1 conspiracy to exceed 1000 kilograms and the amount involved with Count 2 to exceed 100 kilograms. Judgment was entered in accordance with the jury's verdicts. On March 3, 2003, the defendant was sentenced to 300 months' imprisonment, ordered to pay $1500 in fines and assessments, and found jointly and severally liable for $15,000,000 in criminal forfeiture. This appeal ensued.

## II.  Analysis

### A.  Sufficiency of the Evidence

Melendez does not deny that he was a large-scale marijuana supplier to Torbellin and Vilmer, among others. In-

stead, Melendez denies that he was engaged in a conspiracy to distribute marijuana. He argues that the government demonstrated, at most, a buyer-seller relationship between himself and Vilmer or Torbellin.

Sufficiency of the evidence challenges rarely succeed because we owe great deference to the jury's verdict. *See United States v. Hicks*, 368 F.3d 801, 804-05 (7th Cir. 2004). We consider all evidence in the light most favorable to the government. *Id*. Hence, a jury's verdict will be upheld if any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

To prove a conspiracy to distribute marijuana under 21 U.S.C. § 846, the government had to show that a conspiracy existed and that Melendez knowingly joined it with the intent to further its goals. Unlike a buyer-seller agreement, a conspiracy usually involves "a prolonged and actively pursued course of sales coupled with the seller's knowledge of and a shared stake in the buyer's illegal venture." *United States v. Contreras*, 249 F.3d 595, 599 (7th Cir. 2001) (internal quotations omitted). Circumstantial evidence, such as whether there was a level of mutual trust, standardized dealings, sales on credit ("fronting"), transactions in large quantities (i.e., greater than could be used for personal consumption), and whether the seller was aware of the buyer's resale objectives, may be used to prove the conspiracy existed. *See id.*; *United States v. Rivera*, 273 F.3d 751, 755 (7th Cir. 2001); *United States v. Pagan*, 196 F.3d 884, 889 (7th Cir. 1999). However, any one factor standing alone would be insufficient to prove a conspiracy on the behalf of the seller. *Rivera*, 273 F.3d at 755 (citing cases). But where there are adequate indicia of a "concrete, interlocking interest beyond individual buy-sell transactions," we should not disturb the factfinder's inference that a buyer-seller relationship developed in a cooperative—i.e., conspiratorial—venture. *Id.* (citing *Contreras*, 249 F.3d at 599).

The evidence in this case amply supports the jury's verdict. Throughout the 1990s, Melendez indisputably served as one of Torbellin's suppliers. Torbellin, in turn, supplied Vilmer, sometimes fronting the drugs without payment. Moreover, Melendez made at least one (temporarily) unsuccessful attempt to become Vilmer's direct supplier. And following the estrangement of Torbellin and Vilmer, Melendez did indeed directly supply Vilmer with massive amounts of marijuana, partially on credit, through the course of three transactions. At least eight co-defendants gave testimony, supported by documentary evidence (including phone records, calling card records, hotel receipts, vehicle rental records, and tape-recorded conversations), that identified Melendez as a supplier and manager in the conspiracy. In short, it is impossible to say that no rational trier of fact could have found that a conspiracy existed and that Melendez knowingly joined it with the intent of furthering its goals.

### B.   Jury Instruction

The defendant next contends that the district court should have *sua sponte* given a buyer-seller jury instruction. But because none was requested at trial, our review must be for plain error. Under such a standard, an outcome will not be disturbed unless there was a clear or obvious error that caused the defendant prejudice and the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Olano*, 507 U.S. 725, 732-36 (1993); *United States v. Cusimano*, 148 F.3d 824, 828 (7th Cir. 1998). Therefore, even if we were to find that the district court erred in not giving a buyer-seller instruction (a determination from which we abstain), Melendez's appeal as to this issue must nonetheless fail if it does not appear that had the instruction been given, acquittal would have been substantially likely. Given the overwhelming quantum

of evidence against him, Melendez was not prejudiced by the absence of a buyer-seller jury instruction.

### C. Sentence

The defendant makes two arguments with respect to his sentence imposed by the district court: (1) the court's drug quantity calculation used to determine his base offense level under U.S.S.G. § 2D1.1 was in error; and (2) the court incorrectly applied a four-level enhancement for Melendez's role as a leader or organizer under U.S.S.G. § 3B1.1. However, he did not preserve a claim under *United States v. Booker*, 125 S. Ct. 738 (2005), because he failed to argue in the district court that the Guidelines were unconstitutional.

In *Booker*, the Supreme Court reaffirmed *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and extended its holding to the Sentencing Guidelines, concluding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S. Ct. at 756. The Court held that because of this Sixth Amendment problem, it was necessary to change the mandatory nature of the Guidelines. Therefore, the Guidelines are now advisory and the district court may sentence outside the applicable range as long as the sentence is reasonable. *Id.* at 765-66.

In this case, the jury found beyond a reasonable doubt in a special verdict that between 1000 and 3000 kilograms of marijuana were involved in Melendez's conspiracy. That quantity of marijuana corresponded with Level 32 of the Guidelines and a sentence of 121 to 151 months. The trial court, however, sentenced Melendez to 300 months after finding by a preponderance of the evidence that the con-

spiracy involved between 10,000 and 30,000 kilograms of marijuana and determining that Melendez was the leader or organizer of the conspiracy.

Both parties agree that, because Melendez did not raise his Sixth Amendment objection below, we review for plain error. "Under [the plain error] test, before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *United States v. Cotton*, 535 U.S. 625, 631 (2002) (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *Johnson*, 520 U.S. at 467).

The sentence here was imposed in error and the error was plain. *See United States v. Paladino*, No. 03-2296, 2005 WL 435430, at *7 (7th Cir. Feb. 25, 2005). We are unable to determine whether Melendez was prejudiced, however, because we cannot know whether the district court, with the increased discretion permitted by *Booker*, would have imposed the same sentence. So, we will retain jurisdiction of the appeal and "order a limited remand to permit the sentencing judge to determine whether he would (if required to resentence) reimpose his original sentence." *Id.* at *10. If the district court determines that it would have imposed the same sentence, we will find that Melendez was not prejudiced; without a showing of prejudice, the plain error challenge will fail. We will still, however, review the sentence for reasonableness. *Id.* If the judge decides that with more discretion, the sentence would have been different, we will vacate and remand the case for resentencing. *Id.*

*D. Forfeiture*

The trial court found that, for purposes of criminal forfeiture, Melendez is jointly and severally responsible for more than 20,000 pounds of marijuana as a result of his conviction for the conspiracy. The district court's interpretation of the federal forfeiture laws is reviewed *de novo*, while its findings of fact are reviewed for clear error. *United States v. Baker*, 227 F.3d 955, 967 (7th Cir. 2000).

We recently held that 21 U.S.C. § 853(a) is open-ended and "*all* property representing the proceeds of [a] drug [conspiracy] is forfeitable." *United States v. Vera*, 278 F.3d 672, 673 (7th Cir. 2002) (emphasis in original). Moreover, such facts need only be proven by a preponderance of the evidence, and not beyond a reasonable doubt, because forfeiture has long been a civil remedy as well as a criminal sanction. *Id.* Because Melendez waived his right to a jury trial, the district court was left to determine Melendez's responsibility, based upon the evidence introduced at trial, for the total quantity of marijuana distributed by the conspiracy. As such, the district court was free to rest its forfeiture determination on Vilmer's uncontroverted testimony—that the conspiracy distributed more than 40,000 pounds of marijuana. Therefore, there is no reason to disturb the district court's order holding Melendez jointly and severally liable in criminal forfeiture under § 853(a)(1) for all the proceeds of the conspiracy, calculated by the court to be approximately $15,000,000.[1]

---

[1] Given Vilmer's testimony, this is a somewhat conservative estimate of the proceeds of the conspiracy. The district court found that the conspiracy was responsible for at least 20,000 pounds of marijuana and that the drugs were sold for $800 per pound. This would lead to proceeds in excess of the amount sought by the government. However, the government sought only $15,000,000

(continued...)

### III.  Conclusion

For the foregoing reasons we AFFIRM the defendant's conviction and liability in criminal forfeiture. While retaining jurisdiction, we order a limited remand of Melendez's sentence in accordance with *Booker*, *Paladino*, and this opinion. The district court is directed to return this case to us when the limited remand has been completed.

A true Copy:

     Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

---

[1] (...continued)
in Count 7 of the Fourth Superseding Indictment and the district court found Melendez to be liable for that amount.

---