# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 04-2036

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JAMAR HENRY,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 02-CR-30056—**Richard Mills**, *Judge.*

———————

ARGUED APRIL 4, 2005—DECIDED MAY 26,2005

———————

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Jamar Henry challenges his conviction and sentence for possessing with the intent to distribute 5 or more grams of crack. *See* 21 U.S.C. § 841(a)(1), (b)(1)(B). He argues that the government offered insufficient evidence that he intended to distribute 5 or more grams and that the court impermissibly placed the burden on him regarding the drug amount. Henry also argues that his sentencing ran afoul of *United States v. Booker*, 125 S. Ct. 738 (2005). We affirm the conviction but direct a limited remand under *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), on the sentencing issue.

Henry was charged with two counts of possessing 5 or more grams of crack with the intent to distribute it. He opted for a bench trial at which he stipulated to many of the facts necessary for conviction. For the first count Henry stipulated that in October 2001 he was found possessing 5.3 grams of crack. He stipulated that he intended to distribute 4.2 grams of it, but argued and presented some evidence that the remaining 1.1 gram was for personal use. The district court ultimately concluded that there was insufficient evidence that Henry had intended to distribute at least 5 grams as charged, and, based on an erroneous belief that Henry could not be convicted of possessing with the intent to distribute less than 5 grams, acquitted Henry of the first count.

For the second count, which led to the conviction at issue here, Henry stipulated to the following facts. In May 2002 a police officer spotted Henry leaving his girlfriend, Michelle Granderson's, house and arrested him pursuant to a warrant. The officer found Henry in possession of 10.9 grams of crack. When officers conducted a search of Granderson's house, they found .4 grams of crack in a pair of pants with Henry's identification, 2.8 grams in a men's shirt, a digital scale, a spoon with cocaine residue, $800 in cash, and a bag containing 87.1 grams of powder cocaine. Henry admitted to possessing the 10.9 grams of crack on him, but he denied that he intended to distribute any of it. He explained that he did not live at Granderson's house but that he was responsible for the powder cocaine officers found there. He said that he bought 2 ounces (56 grams) a couple days before his arrest and two ounces a week earlier, then cooked some of it into crack and sold small quantities to five individuals. The main issues in dispute for the second count, then, were whether Henry intended to distribute any of the crack that he possessed and, if so, whether he intended to distribute 5 grams.

   At trial the government argued that the court could infer Henry's intent to distribute at least 5 grams of crack based on the total amount that he possessed, the fact that there was a digital scale and potential drug money in Granderson's house, and the fact that Henry admitted that he had already cooked and sold some of the powder cocaine five times in the week or so before his arrest. Henry did not testify, but his counsel argued that a toxicology report and affidavits from his girlfriend and cousin (submitted as part of an earlier suppression hearing but considered by both parties and the judge to be part of the trial evidence) proved that Henry used crack and that the amount found on him was not inconsistent with personal use. His attorney also submitted affidavits to prove that Henry did not live at the residence where the additional crack, scale, or powder cocaine was found.

   The court found Henry guilty. It found that Henry possessed at least 11.4 grams of crack, 10.9 found on him and .4 found in the pair of his pants in the house. (The court's math was slightly off—10.9 plus .4 equals 11.3, though neither party has noticed this on appeal). The court noted that the presence of $800 cash in the house, the digital scale, and the 87.1 grams of powder cocaine indicated that Henry "was selling a good deal more crack than he consumed." The court also said, "The evidence of the Defendant's personal drug use is far too scant for the Court to find that he intended to consume more than 6.4 grams of crack." The court sentenced Henry as a career offender to serve 262 months of imprisonment and 8 years of supervised release and to pay a $100 assessment.

   On appeal Henry first insists that the government presented "absolutely no evidence" to support the court's conclusion that he intended to distribute five or more grams of crack. When faced with challenges to the sufficiency of the evidence, we review the evidence in the light most favorable to the government and uphold the conviction if any rational

trier of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Richardson*, 208 F.3d 626, 631 (7th Cir. 2000).

In order to prove that Henry intended to distribute some crack, the government relied on the amount Henry possessed as well as other factors. The government candidly admitted, however, that the amount alone was probably not dispositive of Henry's intent to distribute because the case law in this area does not draw a clear line between a user amount and a dealer amount and because the government was not offering expert testimony on the issue. The government pointed out that in *United States v. Billops*, 43 F.3d 281, 285 n.4 (7th Cir. 1994), there had been expert testimony that anything over 10 grams suggested an intent to distribute. Other cases have said that far lesser amounts suggest an intent to distribute. *See United States v. Lamar*, 75 F.3d 964, 973 (4th Cir. 1996) (one dose of crack is approximately 1/10 of a gram, so anyone carrying 5 grams, or 50 street doses, should be considered a dealer); *United States v. Haney*, 23 F.3d 1413, 1418 (8th Cir. 1994) (6.57 grams is a dealer amount). But the information from other cases carries minimal persuasive value because there was no expert testimony in this case about what amount of crack is a dose, how many doses users usually carry, and how much Henry himself was likely to be using. *See United States v. Kimmons*, 917 F.2d 1011, 1016 (7th Cir. 1990) (expert testified that depending on the individual even 30 grams could be consistent with personal use).

In addition to the amount Henry possessed, the government pointed out that Henry had admitted to cooking some of the powder cocaine and selling it before he had been caught and admitted to selling 4.2 grams of crack seven months earlier, and there was a scale and possibly drug money in the house that Henry was exiting when he was arrested. Furthermore, Henry claimed responsibility for the additional 87.1 grams of powder cocaine sitting in the house

ready to be cooked into more crack. The court concluded from this evidence that Henry intended to sell crack, and we think a rational factfinder could infer Henry's intent from the evidence presented. *See Billops*, 43 F.3d at 286 (evidence supported intent to distribute when defendant possessed 10.4 grams of crack, previous drug sales had occurred at his house, he possessed drug money, and he admitted to being a drug dealer).

On the issue of the amount that Henry intended to distribute, we first want to clear up some confusion that the parties have expressed over whether drug quantity is an element of the offense. Drug quantity is not an element of the offense. *Edwards v. United States*, 523 U.S. 511, 513-14 (1998). Proof of drug quantity affects the statutory maximum penalty, but that does not make it a necessary element of an offense that must be charged and proved in every case. *See United States v. Macedo*, 371 F.3d 957, 964 (7th Cir. 2004); *United States v. Jones*, 308 F.3d 726, 741 (7th Cir. 2002); *United States v. Smith*, 308 F.3d 726, 740-41 (7th Cir. 2002); *United States v. Bjorkman*, 270 F.3d 482, 491 (7th Cir. 2001). Henry's conviction in this case could be sustained as long as the government proved that he possessed with the intent to distribute *some amount* of crack. *See* 21 U.S.C. § 841(a)(1). And the sentence Henry received, 262 months, is under the statutory maximum for that lesser offense, *see* 21 U.S.C. § 841 (b)(1)(C) (30 year maximum for possession with intent to distribute if current offense occurred after a prior conviction for felony drug offense), so the government's proof of drug quantity in this case was ultimately irrelevant to Henry's conviction and the sentence he received.

Although drug quantity is not relevant to uphold Henry's conviction, it does impact the statutory sentencing range. If the government successfully proves that a defendant intends to distribute at least 5 grams of crack, that proof triggers a mandatory minimum penalty of 10 years, *see* 21

U.S.C. § 841(b)(1)(B). In the event that a resentencing becomes necessary, the court would not be able to give a sentence below 10 years. In this case, the court relied on the amount of cash, the scale, and the inventory of 87.1 grams of powder cocaine waiting to be cooked into crack to conclude that Henry was "selling a good deal more crack than he consumed." Also Henry had admitted to making five sales in the week preceding his arrest. Although the evidence is not overwhelming, we think it was sufficient to allow a rational trier of fact to conclude that Henry was selling more crack than he was consuming. And if Henry intended to sell more than he intended to use of 11.3 grams of crack, that necessarily implies that he intended to sell more than 5 grams.

In a related argument, Henry also contends that the court impermissibly shifted the burden to him on the issue of drug quantity. He asserts that the court required him to prove the amount he intended to use instead of requiring the government to prove the amount he intended to distribute. He points out the court's comment that Henry's evidence of "personal drug use is far too scant" for the court to conclude that he was using as much as he suggested. Rather than suggesting that the court shifted the burden to Henry, we think this comment reveals that the court credited Henry's defense as much as he could back it up with proof. The court could have concluded based just on the government's evidence that Henry intended to sell every bit of the 11.3 grams of crack in his possession in May. Instead, based on Henry's defense, the court decided that at least some portion of the crack was for personal use. The court simply concluded in the end that the evidence did not support that Henry was using as much crack as he suggested. We disagree with Henry that the court placed the ultimate burden of proof on him on the issue of amount.

Henry also argues that his sentencing ran contrary to the *Booker* decision. The district court treated the guidelines as

mandatory, which is error under *Booker.* Henry did not make this argument in the district court, so we review his argument here for plain error. Because the district court sentenced Henry at the lowest end of the guideline range and did not suggest whether the sentence would have been lower under a discretionary regime, we must direct a limited remand under the procedure outlined in *Paladino.* We note, though, that the district court's discretion to impose a lower sentence will be constrained by a 10 year mandatory-minimum. *See* 21 U.S.C. § 841(b)(1)(B).

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*