In the

# United States Court of Appeals
## For the Seventh Circuit
---

Nos. 06-2021 & 06-2041

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JUAN GARZA MARTINEZ and
JORGE GOMEZ CARDENAZ,

*Defendants-Appellants*.

---

Appeals from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:05CR00016—**Sarah Evans Barker**, *Judge.*

---

ARGUED MAY 24, 2007—DECIDED MARCH 3, 2008

---

Before BAUER, KANNE, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. A jury found Juan Martinez and Jorge Cardenaz guilty of conspiracy to possess, and possession of, marijuana with intent to distribute. *See* 21 U.S.C. §§ 846, 841(a)(1). The indictment specifically alleged that both the conspiracy and the substantive violation involved at least 1,000 kilograms of marijuana, a quantity that would trigger a statutory maximum of life imprisonment instead of the default maximum of five years. *See id.* § 841(b)(1)(A)(vii), (b)(1)(D). The jury was not asked to make a specific finding as to drug quan-

tity but instead was told, apparently without objection from the defendants, that in order to convict on either count it had to find that the government proved the amount alleged in the indictment. Later at sentencing the district court concluded that the precise quantity equaled 1,407 kilograms, and used that figure in applying the sentencing guidelines. The court sentenced Martinez to 126 months' imprisonment, but assessed Cardenaz three extra offense levels as a manager or supervisor of the conspiracy and sentenced him to 210 months. On appeal Martinez and Cardenaz contend that their convictions must be set aside because no rational jury could have found beyond a reasonable doubt that the charged offenses involved at least 1,000 kilograms of marijuana. Both appellants also contend that the jury, rather than the district court, should have decided the drug quantity used in applying the sentencing guidelines, and that the district court overstated the relevant amount. Finally, Cardenaz objects to the upward adjustment in offense level for his leadership role. For the reasons that follow, we affirm the convictions and sentences of both appellants.

## I.

In December 2004 authorities learned through wiretaps that a large quantity of marijuana would be delivered to the residence of Hector Torres in Indianapolis, Indiana. Federal and state investigators set up surveillance at the residence, and on December 13 they witnessed the arrival of Carlos Pelayo-Guzman, the buyer from Chicago, Illinois, who was to take delivery of the incoming marijuana at Torres's home. After roughly half an hour, Torres and Pelayo-Guzman left together in the

latter's Jeep and drove to a nearby parking lot, where they met appellant Cardenaz and a fourth man, Elvis Garcia.

Meanwhile, what the surveillance team did not yet know was that appellant Martinez and Johnny Gutierrez were waiting across the street in a white Ford van disguised with FedEx logos. The two had driven the van and its cargo of marijuana-laden crates from Indianapolis to Houston, Texas. Cardenaz pointed out the van to Torres and Pelayo-Guzman and then joined them in the Jeep. The three departed for Torres's house, followed by Martinez and Gutierrez in the van. Garcia stayed behind at the parking lot. When they reached Torres's home, Martinez backed the van carrying the drugs up the driveway and partway into the garage.

Surveillance officers had lost the Jeep in traffic, but one of the investigators returned to Torres's residence and saw Martinez and Gutierrez exit the FedEx van and begin unloading it with help from the others. Fifteen minutes later, uniformed state police officers approached the open garage from the sidewalk and saw bales of marijuana stacked on the floor. Martinez, Cardenaz, Torres, and Pelayo-Guzman were all in the garage. Torres was the first to spot the officers; he immediately yelled, "Police!" and ran into the house. The others were ordered not to move, but only Cardenaz complied. Martinez and Pelayo-Guzman followed Torres from the attached garage into the adjoining family room, but were quickly caught after exiting through the back door. Gutierrez was found hiding in a closet, and Garcia was picked up separately. Fourteen bales of marijuana were recovered from the garage floor; seventy more were found in the family room, and another 118 were still in their crates in the van.

Torres, Pelayo-Guzman, Gutierrez, and Garcia all pleaded guilty to the conspiracy count and testified for the government at Martinez and Cardenaz's joint trial. Torres testified that he, along with Pelayo-Guzman and Cardenaz, traveled in the Jeep to his home on the night of December 13, with the FedEx van following. According to Torres, Cardenaz used a cellular phone to communicate with the occupants of the van, Martinez and Gutierrez, during the drive. Torres testified that once they arrived at his house, he parked in the street, while Martinez backed the van into the garage. After Martinez unlocked the doors, Torres, Pelayo-Guzman, and Cardenaz unloaded the crates of marijuana by "assembly line": Cardenaz removed the marijuana bales from the van and handed them to Pelayo-Guzman, who handed them to Torres, who carried them into the family room. According to Torres, Martinez stood next to him in the garage counting the bales, while Gutierrez, who was ill, had gone into the house to watch television. Pelayo-Guzman confirmed that Martinez counted the bales as they were removed by Cardenaz and passed them to him and on to Torres. Gutierrez added that Garcia's uncle, Jorge Garcia, had hired him to transport the marijuana with Martinez from Houston to Indianapolis. And, finally, Garcia recounted that his uncle had asked him to drive behind the FedEx van from Houston to Indianapolis to "oversee the drop." Garcia testified that Cardenaz accompanied him in the car, in part, because Cardenaz had an "ownership interest" in the marijuana. Martinez and Cardenaz, who stipulated that the net weight of the marijuana found at Torres's residence exceeded 1,000 kilograms, argued that the government's evidence showed only that they were present during a drug transaction. Neither presented any evidence at trial.

After trial a probation officer prepared presentence reports for Martinez and Cardenaz. The officer reported that the total amount of marijuana recovered from the van, garage, and family room was roughly 1,400 kilograms, though any amount from 1,000 to 3,000 kilograms would have yielded the same base offense level of 32. *See* U.S.S.G. § 2D1.1(c)(4). Martinez received no offense-level adjustments and had no criminal history; therefore, he faced a guidelines imprisonment range of 121 to 151 months. Cardenaz's offense level initially was calculated at 32 as well, but the government argued over his objection that Cardenaz was a leader in the conspiracy and should receive a four-level increase. *See* U.S.S.G. § 3B1.1(a). At sentencing the government highlighted Garcia's testimony at trial that Cardenaz was an overseer of the operation. The government also emphasized, and Cardenaz conceded, that various conspirators had asserted during interviews with investigators that Cardenaz helped plan the marijuana delivery. The district court agreed with the government that Cardenaz served a supervisory role, but because the evidence suggested that Jorge Garcia was the principal leader of the conspiracy, it increased Cardenaz's offense level by just three as a manager or supervisor instead of giving him a four-level increase as an organizer or leader. *See* U.S.S.G. § 3B1.1(b). Cardenaz's criminal history category was III, which resulted in a guidelines imprisonment range of 210 to 262 months. The district court sentenced both defendants toward the low end of their respective ranges.

## II.

On appeal Martinez and Cardenaz first argue that the evidence is insufficient to support their convictions for

conspiracy to possess and possession of marijuana. We
have repeatedly noted that defendants challenging the
sufficiency of the evidence face a high burden. *See, e.g.*,
*United States v. Emerson*, 501 F.3d 804, 811 (7th Cir.
2007); *United States v. Morris*, 498 F.3d 634, 637 (7th Cir. 2007);
*United States v. Melendez*, 401 F.3d 851, 854 (7th Cir. 2005).
We will overturn a jury's verdict only if, after viewing
the evidence in the light most favorable to the govern-
ment, no rational trier of fact could have found the essen-
tial elements of the crime beyond a reasonable doubt. *See
United States v. Bernitt*, 392 F.3d 873, 878 (7th Cir. 2004).

In this case, Martinez and Cardenaz seek to overturn
their convictio*n*s because, they contend, a rational jury
could not have found that the marijuana bales in the
family room were part of the shipment delivered in the
FedEx van, and thus could not reasonably have con-
cluded that their drug offenses involved at least 1,000
kilograms of marijuana. This contention incorrectly presup-
poses that drug quantity is an element of the charged
offenses. As we have said repeatedly, the drug quantity
is not an element of the crimes defined by § 846 or
§ 841(a)(1). *See, e.g.*, *United States v. Tolliver*, 454 F.3d 660,
669 (7th Cir. 2006); *United States v. Gougis*, 432 F.3d 735, 745
(7th Cir. 2005); *United States v. Henry*, 408 F.3d 930, 934
(7th Cir. 2005). The government's evidence of drug quan-
tity sometimes "affects the statutory maximum penalty,
but that does not make it a necessary element of an offense
that must be charged and proved in every case." *Henry*,
408 F.3d at 934.[1] And even if quantity had been an element,

---

[1] The government proposed to submit a special verdict to the
jurors, asking them to decide the weight of the marijuana. This
(continued...)

the evidence that the conspiracy and substantive counts involved at least 1,000 kilograms is overwhelming. The appellants were caught unloading a van filled with marijuana, and they stipulated that more than 1,000 kilograms were found between the van, garage, and family room. Their contention that they could not have managed to unload and stack seventy bales in the family room before the police arrived cannot be accepted in light of their coconspirators' testimony that they did exactly that. Accordingly, we reject Martinez and Cardenaz's challenge to the sufficiency of the evidence.

Inviting our attention to the Supreme Court's decision in *Cunningham v. California*, 127 S. Ct. 856 (2007), Martinez and Cardenaz next contend that their sentences should be vacated because the district found on its own, without a jury, that the marijuana quantity was 1,407 kilograms. The appellants' reliance on *Cunningham* is misplaced. Prior to *Booker*, judicial fact-finding in applying the guidelines raised constitutional concerns because the guidelines

---

[1] (...continued)

was the proper means of seeking a jury determination on the question of drug quantity. *See Tolliver*, 454 F.3d at 668-69; *United States v. Macedo*, 406 F.3d 778, 786 (7th Cir. 2005). The district court instead instructed the jury that it must find the weight alleged in the indictment in order to convict. The court's instructions were incorrect, but whether the court acted at the defendants' *behest* or over their objection we cannot tell, because the defendants have not provided us a transcript of the jury-instruction conference or made any reference in their brief to the court's instructions. In any event, the defendants make no argument about the manner in which the quantity determination was submitted to the jury, and thus we decline to comment further.

were treated as "laws with binding effect." *United States v. Hollins,* 498 F.3d 622, 633 (7th Cir. 2007); *United States v. Gallardo*, 497 F.3d 727, 739 (7th Cir. 2007). But *Booker* eliminated the constitutional concern by making the guidelines advisory and, as we have already held, the subsequent decision in *Cunningham* "has no effect on post-*Booker* federal practice." *United States v. Roti,* 484 F.3d 934, 937 (7th Cir. 2007); *see United States v. Savage*, 505 F.3d 754, 764 (7th Cir. 2007) (declining to reconsider *Roti*). Additionally in this case, because of the manner in which the district court instructed on the elements of the charged offenses, *see supra* note 1, the jury—not the judge—did find beyond a reasonable doubt that the counts of conviction involved at least 1,000 kilograms of marijuana. That amount, not the entire 1,407 kilograms found by the judge, was enough to trigger the base offense level of 32 that the court applied. *See* U.S.S.G. § 2D1.1(c)(4).

Martinez and Cardenaz also argue that, at sentencing, the district court failed to consider whether the entire load of marijuana was reasonably foreseeable to them. The court did not, in fact, consider foreseeability, but neither was it required to. Under the sentencing guidelines, a defendant in a drug case is liable for any amount that he was directly involved with, as well as any amount attributable to his coconspirators, so long as the additional amount was reasonably foreseeable to him. *See* U.S.S.G. § 1B1.3(a); *Hollins*, 498 F.3d at 630-31; *United States v. Goodwin*, 496 F.3d 636, 642 (7th Cir. 2007). "Reasonable foreseeability" is thus a qualification to holding one conspirator accountable for the conduct of others; it "does not apply to conduct that the defendant personally undertakes, aids, abets, counsels, commands, induces, procures, or wilfully causes." U.S.S.G. § 1B1.3(a)(1)(A) cmt. n.2(ii).

Here, the evidence overwhelmingly established that Martinez drove 1,407 kilograms of marijuana from Houston to Indianapolis, and that Cardenaz had an ownership interest in the drugs and supervised the conveyance and delivery. Both appellants were unloading the bales when they were arrested. The district court concluded that Martinez and Cardenaz were directly involved with the entire load, and thus the court had no reason to address whether the drugs were reasonably foreseeable. *See generally United States v. Hach*, 162 F.3d 937, 950-51 (7th Cir. 1998) (upholding district court's determination that defendants were jointly liable for the entire amount of drugs in conspiracy).

Finally, Cardenaz argues that the district court improperly increased his offense level after finding that he was a manager or supervisor in the conspiracy. *See* U.S.S.G. § 3B1.1(b). We review the district court's determination of a defendant's role in the offense for clear error. *See United States v. Brownell*, 495 F.3d 459, 464 (7th Cir. 2007); *United States v. Johnson*, 489 F.3d 794, 796 (7th Cir. 2007). At sentencing the district court acknowledged that Jorge Garcia was the head of the conspiracy but concluded, after reviewing the coconspirators' testimony, that "everybody on the ground, everybody who was doing something in this conspiracy to make the transportation of the marijuana happen was taking orders from Mr. Cardenaz." At least one of the conspirators, Elvis Garcia, explicitly stated that Cardenaz had an ownership interest in the operation. Although there was some confusion at trial between Jorge Garcia and Jorge Cardenaz, Garcia clearly testified that his uncle hired both him and Cardenaz, and that Cardenaz had a supervisory role. Given this evidence, we do not find that the district court committed clear error in applying the upward adjustment.

### III.

We AFFIRM the convictions and sentences of Martinez and Cardenaz.

USCA-02-C-0072—3-3-08