NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 5, 2008
Decided April 14, 2008

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 07-2690

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Southern District of Indiana, |
| | Evansville Division. |
| *v.* | |
| | No. 06 CR 23 |
| DALE L. SANDERS, | |
| *Defendant-Appellant*. | Richard L. Young, |
| | *Judge.* |

**O R D E R**

Dale Sanders was convicted at a bench trial of conspiring to possess with intent to distribute methylenedioxymethamphetamine (Ecstacy). *See* 21 U.S.C. §§ 841(a)(1), 846. The district court sentenced Sanders to 240 months' imprisonment and 6 years' supervised release. On appeal, Sanders argues that the evidence of conspiracy was insufficient. Because there was sufficient evidence for the district court to find Sanders guilty of conspiracy, we affirm.

The Evansville, Indiana police purchased 20 pills of Ecstacy from Krystal Eapmon and convinced her to cooperate with them as a confidential informant. As part of her cooperation, she introduced undercover officers to her source of Ecstacy, Zachary Wilson. The officers attempted to purchase Ecstacy from Wilson. Wilson, though, had problems completing the sale, as his source was unreliable. He told undercover officers he had a more reliable source in Louisville, Kentucky. The next day, officers gave Wilson $500, and he and Eapmon drove to Louisville, returning with 20 tablets of Ecstacy. Officers next made a larger controlled purchase from Wilson, who purchased 100 pills from his Louisville supplier for $1,200. After this purchase, Eapmon gave officers the telephone number of Wilson's Louisville supplier, and they determined the number belonged to Dale Sanders. Wilson later identified his supplier as "Dale."

Officers next targeted Sanders. They arranged to purchase from Wilson 1,000 tablets of Ecstacy for $10,000. Undercover officers, with Wilson, drove to Louisville. Wilson told the officers he would call Sanders before he left Evansville, again as he approached Louisville, and one more time in Louisville. Wilson called Sanders from one of the officers' cellular phones as they approached Louisville. Sanders stated he was having trouble obtaining the full "boat" of one thousand pills, but that he could get half that number when they arrived and half later that night, and suggested they contact him again when they got into town. After Wilson and the officers arrived in town, Wilson spoke to Sanders again, and Sanders told them to wait. Sanders later called Wilson and they agreed to meet at a hotel in Louisville. At the hotel, Wilson entered Sanders's vehicle and gave him $5,000 for half of the pills. DEA officers then arrested both men, and found a plastic bag containing 491 Ecstacy tablets hidden near where Sanders's car had first been parked.

At Sanders's bench trial, Eapmon testified that she had obtained Ecstacy from Wilson several times. She also testified that Wilson had told her he had a supplier named Dale in Louisville, and that from fall 2005 to March 2006, she made ten to fifteen trips to Louisville with him to purchase Ecstacy from Sanders. Eapmon testified that they most often met Sanders at a pool hall in Louisville, but twice met Sanders at his apartment. Wilson purchased quantities of up to 500 tablets at a time and distributed them to people in Evansville who had purchased them from him. Sanders and Wilson had an arrangement for a volume discount. Eapmon testified she never saw Sanders count the money Wilson gave him.

Aside from Eapmon, several law enforcement officers testified at Sanders's trial After the prosecution rested, Sanders moved for a directed verdict, arguing that the government had not proved conspiracy, but instead just a mere buyer-seller relationship. The court denied the motion for a directed verdict and found Sanders guilty of conspiracy, relying in particular on the evidence that Wilson and Sanders had an ongoing relationship,

that Wilson had Sanders's telephone number memorized and knew where he lived, that they had an arrangement for volume discounts and a standardized method of dealing with each other, and that from Eapmon's testimony, Sanders generally did not count money given to him by Wilson.

Sanders first argues that there was insufficient evidence that he conspired with Wilson to distribute Ecstacy. We consider the evidence in the light most favorable to the government, and will uphold the verdict if a rational trier of fact could have found the elements of the crime had been proven. *United States v. Melendez*, 401 F.3d 851, 854 (7th Cir. 2005). To prove a conspiracy to distribute drugs, the government must prove that the defendant agreed to commit a crime other than the sale itself. *United States v. Carrillo*, 435 F.3d 767, 775 (7th Cir. 2006). While evidence establishing a mere buyer-seller relationship over time is not enough, "'evidence showing a shared interest in continued sales over time'" is sufficient. *Id.* (quoting *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003)). In the past, we have considered factors such as the length of the relationship, the established method of payment, the extent to which the transactions were standardized, and the level of mutual trust. *United States v. Contreras*, 249 F.3d 595, 599 (7th Cir. 2001). We have also looked to whether the seller was aware of the buyer's resale objectives and the quantities of drugs involved. *Melendez*, 401 F.3d at 854. None of these factors are dispositive, but if, taken together, they "'point to a concrete, interlocking interest beyond individual buy-sell transactions,'" we will not second-guess the inference that a cooperative venture existed. *Contreras*, 249 F.3d at 599 (quoting *United States v. Hach*, 162 F.3d 937, 943 (7th Cir. 1998)).

Sanders argues this case is analogous to *United States v. Rivera,* 273 F.3d 751 (7th Cir. 2001), where this court reversed a conspiracy conviction because there was insufficient evidence of more than a buyer-seller relationship. However, the facts supporting a conspiracy in this case are stronger than the facts in *Rivera*. *Rivera* dealt with a three-month, four-transaction relationship. *Id.* at 755. Here, the relationship lasted at least six months and involved at least ten to fifteen transactions. Sanders points out that in *Rivera* there was a volume discount too—but in that case, there appeared to be a one-time arrangement to give the buyer a discount for a higher quantity in one deal. *Rivera*, 273 F.3d at 754. Sanders and Wilson had an established volume discount. These discounts support a finding of conspiracy. *See United States v. Askew*, 403 F.3d 496, 502 (7th Cir. 2005). Wilson and Sanders had a standardized method of transaction: remaining in telephone contact when Wilson would travel to Kentucky and generally meeting at a preferred meeting place. There was also evidence of trust between Wilson and Sanders. Wilson knew where Sanders lived, Sanders did not always count the money Wilson gave him, and Sanders sold to Wilson even when he brought strangers to the transaction, as at the buy/bust. This evidence, plus the large quantities of Ecstacy transacted, supported an inference of a "shared interest in continued sales over time." *See Carrillo*, 435 F.3d at 775 (internal quotation marks and

citation omitted).  A rational trier of fact could have found that the government proved a conspiracy beyond a reasonable doubt.

Finally, Sanders also argues, as an undeveloped afterthought, *see* Fed. R. App. P. 28(a)(9), that the district court lacked jurisdiction to hear this case, because, he argues, he did not conspire to distribute Ecstacy in Indiana.  He argues that he should instead have been tried in Kentucky, since there was no evidence he ever performed any drug activity in Indiana.[1]  Sanders appears to confuse jurisdiction with venue—he is arguing he was tried in the wrong place, not that the court was the wrong kind of tribunal to hear his case.  *See New York v. Envtl. Prot. Agency*, 133 F.3d 987, 990 (7th Cir. 1998).  Regardless, venue under 21 U.S.C. § 846 is proper in any district in which an overt act in furtherance of the conspiracy occurred.  *United States v. Rodriguez*, 67 F.3d 1312, 1318 (7th Cir. 1995).  Wilson's purchase of drugs from Sanders in Kentucky then resold in Indiana was an act in furtherance of the conspiracy, so venue was proper in Indiana.

AFFIRMED.

---

[1] Sanders may be right that the more logical place to prosecute him would have been Kentucky but it is clear that a crime was committed in both jurisdictions.  Ultimately, however, it would not have mattered because distribution carries the same penalty as the conspiracy, s*ee* 21 U.S.C. § 846, and Sanders essentially concedes that he was guilty of distributing Ecstacy.