16 F.3d 1226
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff/Appellee,
v.
Cesar HERNANDEZ and Julio Gil, Defendants/Appellants.
 Nos. 93-2198, 93-2199.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 25, 1994.
Decided Feb. 8, 1994.
Rehearing Denied March 2, 1994.
 
 Before CUMMINGS, BAUER and ESCHBACH, Circuit Judges.
 
 ORDER
 
 1
 Cesar Hernandez and Julio Gil pleaded guilty to conspiracy to distribute and conspiracy to possess with the intent to distribute approximately five kilograms of cocaine in violation of 21 U.S.C. Sec. 846. Gil was sentenced to ten years of imprisonment. Due to a prior felony drug conviction, Hernandez was sentenced to the mandatory minimum of twenty years of imprisonment. 21 U.S.C. Sec. 841(b)(1)(A). On appeal, both Hernandez and Gil challenge their sentences under U.S.S.G. Sec. 2D1.1, arguing that the sentencing judges erred in not using the actual amount of cocaine seized to calculate their base offense levels.
 
 BACKGROUND
 
 2
 On August 29, 1991, Hernandez met with Sergio Garcia, a government informant, to discuss a six kilogram cocaine transaction. According to a DEA report, Hernandez told Garcia that he was awaiting the arrival of 30 to 40 kilograms of cocaine from Miami, Florida but could obtain cocaine from another source. He told Garcia that he would notify him the next day if he could obtain the cocaine for next day delivery. All subsequent dealings between Hernandez and Garcia were taped.
 
 
 3
 In a telephone conversation the next day, Hernandez told Garcia that "everything's confirmed," and asked Garcia whether he was coming over now. Garcia responded in a subsequent phone call that his father (in reality, FBI agent Rafael Tovar) had just completed a deal and would not be needing the cocaine until the following week. When Garcia contacted Hernandez the following week, Hernandez did not have the cocaine but promised to have the agreed six kilograms that Friday. The following day, however, Hernandez told Garcia that he was ready to produce the six kilograms and that he was "looking at the books [cocaine] and they have very nice hard covers, very pretty." The two agreed to meet the next day at a restaurant, and Hernandez suggested that Garcia could check the cocaine at Hernandez's friend's apartment near the restaurant.
 
 
 4
 Garcia met Hernandez as planned. Hernandez told Garcia that the cocaine would be delivered to his friend's apartment nearby. He suggested, however, that they not go into the apartment until the cocaine had arrived, stating "cause, you know, it will be five kilos and it takes a while." After Hernandez and Garcia had waited for some time, Hernandez suggested that they walk to the apartment "so that we're not seen standing here for too long." Hernandez went to a nearby phone booth to make a call. When he returned, he told Garcia that he had spoken with his nephew, who was not "one of those," and that "they had--they got five. At this time, they're ten minutes away. In case these people don't show up ... then I'll give you five." Hernandez also told Garcia that he could not contact his first source. He then had the following conversation with Garcia:
 
 
 5
 Hernandez: I'll give you five.
 
 Garcia: Uh-huh
 
 6
 Hernandez: "Cause they have five. My nephew has already received it. I'll give you five and if you need the other one, I'll call him for him to go to Berwyn (unintelligible), I also have in the apartment. Understand? The other one.
 
 
 7
 Garcia: In other words, after these or--or total?
 
 
 8
 Hernandez: No. You--pay me, it's just that I don't have the five.
 
 
 9
 Garcia: Oh.
 
 
 10
 Hernandez: You pay me for five.
 
 
 11
 Garcia: Yes.
 
 
 12
 Hernandez: And as soon as these people arrive with the six, I'll give them the money and get the six from them. Understand? Then you call me, 'cause it seems that (unintelligible). You call and I--have the other one by Berwyn. Okay? So that--
 
 
 13
 Garcia: Yes, it's fine that way.
 
 
 14
 Garcia and Hernandez then went into the apartment to wait for the cocaine. After a short while, Hernandez's cocaine supplier, Joel Barajas, arrived at the apartment and had a conversation with Hernandez outside Garcia's presence. Hernandez subsequently told Garcia that Barajas did not want to bring the cocaine into the house to be tested because "that guy doesn't have any trust ... he wants us to go check it out there, on the street." When asked whether Barajas was going to bring the cocaine, Hernandez stated that Barajas would not tell him because Garcia was not a friend of Hernandez's.
 
 
 15
 Shortly after, Gil arrived with five separately wrapped packages, each containing approximately one kilogram of cocaine. Agent Tovar, posing as Garcia's father, then entered the apartment to pay for the cocaine. During the transaction, Agent Tovar asked Hernandez about possible future drug deals. He asked Hernandez how much cocaine Hernandez could get him later. Hernandez responded "I can get you more later, if you want.... Whatever you need." When asked whether he could get ten more kilograms, Hernandez stated: "I don't know right now.... I'll have to speak with my friend and see." Agent Tovar's subsequent question as to whether Hernandez could sell him ten kilograms per week was not answered because of the arrival of the police. The total weight of the cocaine seized was 4991.1 grams without packaging.
 
 
 16
 Gil entered into a written plea agreement, which stated that he had conspired to "possess with intent to distribute and to distribute five kilograms of cocaine." Although Hernandez also pleaded guilty to conspiracy to distribute cocaine, there was no written plea agreement. At sentencing, Judge Moran found Hernandez responsible for at least five kilograms of cocaine. Although the judge stated that "a 10-year swing on nine grams is appalling," he found that there was no question as to whether Hernandez thought the amount delivered was five kilograms. He also found that Hernandez intended to deliver six kilograms and had every expectation of being able to come up with the last kilogram. He did not take into account the ten or more kilograms Agent Tovar discussed with Hernandez immediately before the arrest.
 
 
 17
 Judge Alesia, who sentenced Gil, held Gil accountable for five kilograms. The judge found that although Gil did not know that six kilograms were negotiated, he was told and had agreed to deliver five kilograms. The judge also found Gil reasonably capable of producing the additional nine grams to make the weight of the seized cocaine a full five kilograms. Both Hernandez and Gil challenge the amount of cocaine used to calculate their sentences.
 
 ANALYSIS
 
 18
 The sentencing court determines the quantity of drugs involved in an offense by a preponderance of evidence, United States v. Isirov, 986 F.2d 183, 185 (7th Cir.1993), and we review the sentencing court's finding for clear error. Isirov, 986 F.2d at 185; United States v. Cea, 963 F.2d 1027, 1030 (7th Cir.1992), cert. denied, 113 S.Ct. 281 (1992). Application note 12 to Sec. 2D1.1 of the Sentencing Guidelines provides:[1]
 
 
 19
 In an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.
 
 
 20
 This court has explained that the purpose of this application note is to prevent a defendant from being sentenced "on the basis of idle boasts or braggadocio rather than for the amount of contraband he actually intended to produce ... and was reasonably able to produce." United States v. Cotts, No 92-4121, slip op. at 12 (7th Cir. Jan. 7, 1994) (citing Cea, 963 F.2d at 1031). The government bears the burden of proving that a defendant has the capability and the intent to distribute the negotiated amount. United States v. Cedano-Rojas, 999 F.2d 1175, 1179 (7th Cir.1992).
 
 
 21
 a. Hernandez
 
 
 22
 Hernandez claims that he was incapable of producing either the missing nine grams or the sixth kilogram. In support of his claim of lack of access, he cites his own statement during the transaction: "I don't know right now ... I'll have to speak with my friend and see." This ambivalent statement was made, however, in response to Agent Tovar's question about whether Hernandez could get ten more kilograms, not the sixth kilogram. In fact, despite his claim of lack of access, Hernandez was able to obtain five kilograms upon short notice when his first source could not produce the cocaine in a timely basis. His ability to do so suggests that his access to cocaine was not as limited as he now claims.[2]
 
 
 23
 Similarly, Hernandez's argument that he lacked the necessary funds to get additional cocaine is contradicted by his own argument that he was able to arrange the six kilogram transaction only because Barajas was willing to front the cocaine. There is no evidence suggesting that Hernandez would not be fronted cocaine again. Thus, the district court could reasonably find that Hernandez had the capability to produce either the missing nine grams or the additional kilogram.
 
 
 24
 With respect to the requirement of intent to produce, Hernandez concedes that the amount of cocaine initially promised was six kilograms. He contends, however, that he intended to deliver only what he actually delivered, that is, 4991.1 grams. He maintains that his statements concerning the sixth kilogram initially promised were mere idle boasts or braggadocio. In support, he referred to the other false representations to Garcia before and during the transaction. When he called Garcia to confirm the six kilogram deal, he allegedly lied about how he was looking at the cocaine and that it looked very nice. He also claims that he falsely represented to Tovar his ability to have Gil get cocaine in Berwyn.
 
 
 25
 Hernandez cites United States v. Ruiz, 932 F.2d 1174 (7th Cir.), cert. denied, 112 S.Ct. 151 (1991), in which the defendant negotiated to sell two kilograms of cocaine but produced only one. In response to the buyer's inquiry about the other kilogram, the defendant stated, "[i]t doesn't matter, I'll get you the other kilo. And if you want, even ten more I can get." Id. The second kilogram was delivered later. This court held that the sentence should have been based on two kilograms, not ten, because the evidence failed to demonstrate that the conspirators really had the requisite intent to produce the ten kilograms. Hernandez argues that like Ruiz, who was not held responsible for the ten kilograms he bragged about, he should not be held responsible for the sixth kilogram.
 
 
 26
 Hernandez's argument may have been stronger if he had been charged with the ten or more kilograms that he discussed with Agent Tovar. He was held responsible, however, only for the six kilograms that he repeatedly expressed a commitment to deliver during the several conversations prior to his meeting with Garcia. Thus, just as Ruiz was held accountable for the two kilograms he had conspired to sell, Hernandez can be held responsible for six kilograms. See Cea 963 F.2d at 1031 ("[o]ur cases make it clear that a defendant will be held responsible for the full amount of drugs he earnestly negotiates to buy or sell.") While Hernandez may have lied about actually having the six kilograms in his possession, there was a firm agreement with a set price and quantity and an arranged location. Id. Cf. United States v. Reyes, 979 F.2d 1406 (10th Cir.1992) (no evidence supports finding of "negotiation" or "agreement" where defendant did not discuss the details of the sale but merely agreed to meet later).
 
 
 27
 Moreover, when Hernandez arranged to have his nephew deliver five kilograms, he told Garcia: "I'll give you five and if you need the other one, I'll call him for him to go to Berwyn (unintelligible), I also have in the apartment.... You call and I--have the other one by Berwyn." Again, while Hernandez may have lied about having the cocaine in his apartment or the availability of cocaine in Berwyn at that particular time, he demonstrated an intent to deliver the sixth kilogram. Although no specific time or place was arranged for the delivery of the sixth kilogram, it was not clearly erroneous for the district court to find that Hernandez intended to produce the sixth kilogram later. See United States v. Macias, 930 F.2d 567, 570 (7th Cir.1991) (defendant arranged to sell eight kilograms of cocaine but delivered only five and stated that he could supply three additional kilograms by 5:00 p.m. that evening; defendant held accountable for all eight kilograms); United States v. Buggs, 904 F.2d 1070, 1078 (7th Cir.1990) (stating that where the defendant "negotiated to sell more than he actually sold, the district court was correct in basing its calculation on the amount negotiated"). Cf. United States v. Moon, 926 F.2d 204, 208-10 (2d Cir.1991) (conversations early in the negotiations concerning the availability and price of "one or two" kilograms not sufficient to sustain district court's sentence calculation based on two kilograms, where the evidence revealed that the total amount the buyer actually sought to and did purchase was one kilogram).
 
 
 28
 Hernandez argues that he had considered the transaction complete when 4991.1 grams were delivered, and thus the previous discussions about larger quantities are irrelevant.[3] It is true that Sec. 2D1.4 requires that the "negotiated amount" be considered only when there is an "uncompleted distribution." However, this court has said that "while the application note speaks in terms of an uncompleted distribution, it is well established that it applies to partially completed distributions as well." Buggs, 904 F.2d at 1078. Given that six kilograms were initially negotiated and only five kilograms were delivered, it was not clearly erroneous for the district court to consider the transaction "uncompleted."
 
 
 29
 In any event, as the district court found in the alternative, Hernandez could still be held responsible for five kilograms. Hernandez contends that although he had promised to deliver five kilograms, he intended to deliver only 4991.1 grams. He claims that drug suppliers routinely deliver a little short of the amount promised because buyers usually would not be able to detect any shortfall until after the removal of the packing material. However, given Hernandez's negotiation of five kilograms and his statements to Garcia about being able to produce at least five kilograms if his source did not show up, the district court could reasonably find that Hernandez had the requisite intent to produce five kilograms. In fact, Hernandez himself described the conspiracy as involving five kilograms. When asked to describe his own criminal conduct during the plea hearing, Hernandez told the court how he arranged "five" kilograms for Garcia. Thus, a reasonable inference is that Hernandez intended to deliver five kilograms.
 
 
 30
 b. Gil
 
 
 31
 The government argues that Gil has waived any challenge to the amount of drugs used by the district court to calculate his sentence because he stipulated in an unconditional plea agreement that the conspiracy involved at least five kilograms of cocaine. The government cites United States v. Tolson, 988 F.2d 1494 (7th Cir.1993), in which this court held that the defendant had waived the right to challenge at sentencing the accuracy of the date he joined the conspiracy by pleading guilty to the indictment's conspiracy count. Because the defendant signed the plea agreement knowingly, voluntarily, and without reservation, we said that "we can only assume [the defendant] ... was admitting to all the facts in the indictment." Tolson, 988 F.2d at 1501.[4]
 
 
 32
 While the government's reliance on Tolson may be justified if Tolson is construed broadly, Tolson 's waiver rule applies more appropriately to situations where a defendant is challenging an element of the offense stated in the indictment or the facts constituting such elements, rather than to cases where a defendant is challenging the amount of drugs attributable to him at sentencing after a plea of guilty. The cases cited in Tolson do not contradict this observation. See Tolson, 988 F.2d at 1507 (concurring opinion) (stating that not one of cited cases in the opinion supports the proposition announced by the majority opinion). For example, United States v. Savage, 891 F.2d 145, 150 (7th Cir.1989), held that a defendant, who had pleaded guilty to membership in a conspiracy as charged in the indictment, has relinquished his right to challenge the conspiracy. Another example is McCarthy v. United States, 394 U.S. 459, 466 (1969), in which the Supreme Court stated that "a guilty plea is an admission of all the elements of a formal criminal charge" (emphasis added).
 
 
 33
 In fact, in United States v. Isirov, 986 F.2d 183, 186 (7th Cir.1993), we said that the government was mistaken when it argued that "the defendant ha[d] 'waived' any challenge to the PSR's [presentence report's] allegations by stipulating to those facts in his plea agreement." In Isirov, the defendant had pleaded guilty to a conspiracy charge involving "five or more kilograms," but asserted on appeal that the district court erred in relying on the seven kilograms stated in the PSR to calculate his sentence. Although Isirov ultimately held that the defendant did not meet his burden to refute the correctness of the alleged facts, for sentencing purposes the factual allegations contained in the indictment are not established irrefutably simply because the defendant pleaded guilty to the indictment.
 
 
 34
 Section 6B1.4 of the Sentencing Guidelines, which applies to stipulations contained in a plea agreement that are relevant to sentencing, makes clear that while stipulations are expected to be accurate and complete, a court is not bound by a stipulation of facts when sentencing the defendant, "but may with the aid of the presentence report, determine the facts relevant to sentencing." U.S.S.G. Sec. 6B1.4 and comment. Implicit in the proposition that "the district court cannot rely exclusively on the plea agreement stipulations in arriving at a drug quantity," Isirov, 986 F.2d at 186, is the idea that a defendant can bring to the sentencing court's attention any factual inaccuracies in the PSR, even though they may be consistent with stipulations in a plea agreement. See United States v. Atehortua, 875 F.2d 149, 152 (7th Cir.1989) (stating that where the plea agreement, the lab report, and the PSR gave inconsistent quantities of drugs defendant distributed, counsel "should have flagged these inconsistencies" for the sentencing judge's attention). Accordingly, we find that for sentencing purposes, Gil has not waived any challenge to the weight of cocaine by pleading guilty to the indictment.
 
 
 35
 Reaching the merits of Gil's argument, we find that the district court properly held Gil responsible for five kilograms. Gil argues he should not be held responsible for more than what was actually delivered because he did not negotiate the five kilogram deal. This argument is not supportable because Gil was told and had agreed to deliver five kilograms. Thus, it was reasonable for the district court to take the plain meaning of Gil's statement and find that he intended to deliver five kilograms. Gil's claim that he was only capable of producing 4991.1 grams also cannot succeed because he was able to produce 4991.1 grams upon short notice. The district court reasonably could find that Gil would be able to produce another nine grams if the shortage was identified.
 
 CONCLUSION
 
 36
 For the foregoing reasons, we affirm the district courts' judgments.
 
 
 
 [1]
 This application note was originally found in Sec. 2D1.4, which was deleted by consolidation. U.S.S.G.App. C 447 (Nov. 1992)
 
 
 [2]
 United States v. Crespo, 982 F.2d 483 (11th Cir.1993), offers little to support Hernandez's claim. In Crespo, the defendant mentioned sources he had in Atlanta and Miami, negotiated for multiple kilograms of cocaine, but was arrested after only delivering a sample of one-third of a gram. The district court held the defendant accountable only for the amount actually delivered, finding that the negotiations between the defendant and the undercover agent were not sufficient to prove the defendant's capability of actually producing five or three kilograms. The Eleventh Circuit, however, never reached the merits of the case because the government waived the issue
 
 
 [3]
 Hernandez cites United States v. Bryant, 987 F.2d 1225, 1229 (6th Cir.1992) for the proposition that where a defendant is charged with a completed transaction, "the negotiated amount is no longer relevant." In Bryant, however, the defendant was only charged with distribution. In holding the defendant accountable for only the amount delivered at the completion of that particular sale, the Bryant court emphasized that the defendant was not charged with attempt or conspiracy. Because Hernandez pleaded guilty to conspiracy, Bryant does not support his argument
 
 
 [4]
 In so holding, we found United States v. Gilliam, 987 F.2d 1009 (4th Cir.1993), factually distinguishable. See Tolson, 988 F.2d at 1501. In Gilliam, the Fourth Circuit allowed the defendant to challenge the quantity of drugs attributable to him despite the fact that the indictment and guilty plea both stated that the conspiracy distributed 30 kilograms of cocaine. The Fourth Circuit vacated the defendant's sentence based on the fact the indictment did not state what amount was attributable to the particular defendant