# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-3663

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BOBBY DEWAYNE JOHNSON,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 01-30152-DRH—**David R. Herndon**, *Judge.*

———————

ARGUED APRIL 7, 2003—DECIDED AUGUST 19, 2003

———————

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Bobby DeWayne Johnson received a sentence that was seven and a half years more than the ten-year mandatory minimum due to the district court's relevant conduct determination that he distributed 1.5 kilograms of crack cocaine. On appeal, he challenges the district court's drug quantity calculation, arguing that the self-incriminating statement he made following his arrest was unreliable and should have been evaluated under a clear and convincing evidence standard of proof. We do not find Johnson's statement unreliable, nor do we believe the district court was required to apply a higher standard of

proof than the preponderance of the evidence standard. Therefore, we affirm Johnson's conviction and sentence.

## I.  BACKGROUND

Johnson was arrested when he arrived at a hotel room to consummate a drug sale with a police informant. During the arrest, the police searched Johnson and seized 10.8 grams of crack cocaine and .62 grams of heroin. Johnson began crying, stating that he was willing to cooperate and did not want to go to jail. He also told the officers that he had a large heroin habit of 2 grams per day. The following day, eleven hours after his arrest, Johnson was advised of his *Miranda* rights and agreed to make a statement. In his statement, he admitted that he had sold "1/16th" (one ounce) of crack cocaine to the informant six times in the past week and a half, and had sold one ounce of crack cocaine each day for the past seven or eight months. Johnson was indicted for possession with the intent to distribute in excess of five grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii), and ultimately pled guilty to the charge without entering into a written plea agreement with the government.

Before Johnson pled guilty, the government filed an information which included, pursuant to 21 U.S.C. §§ 841, 850, and 851, giving the court and Johnson notice that he was subject to a mandatory minimum sentence of 10 years' imprisonment and a maximum sentence of life imprisonment due to a previous felony drug conviction. At the guilty plea hearing, the government informed the court of Johnson's post-arrest statement in which he admitted his involvement in the offense and detailed conduct that amounted to distribution in excess of 500 grams of crack cocaine. The district court determined that Johnson knew (1) he was pleading guilty to possessing in excess of 5 grams of crack cocaine with the intent to distribute, (2) he was facing a

sentence of 10 years to life, and (3) because of his post-arrest statement his sentence could be severe. The court advised Johnson that, in addition to the 10.8 grams seized during his arrest, his accountability with respect to other drugs would require a separate determination of relevant conduct that the court would make rather than a jury. Johnson acknowledged that he understood this process and, other than challenging that he sold more than 500 grams of crack cocaine, agreed with the government's factual assertions.

At sentencing, the district judge reviewed the presentence investigation report (PSR) detailing Johnson's relevant conduct based on his post-arrest statement, which concluded that Johnson's relevant conduct consisted of distributing in excess of 1.5 kilograms of crack cocaine.[1] Johnson objected to this calculation by challenging the reliability of his statement. He offered witnesses who testified that he may have been suffering from heroin withdrawal and desperate for more drugs at the time he made his statement. He also argued for a higher standard of proof than the preponderance of the evidence standard. The district court adopted the PSR, overruled Johnson's objection, and refused to apply a higher standard of proof. The court ruled that his relevant conduct was 1.5 kilograms or more of crack cocaine, which resulted in a sentencing range of 210 to 262 months' imprisonment, and sentenced him to 210 months.

Johnson now appeals, renewing his argument that his post-arrest statement was unreliable. He asserts that his lengthy sentence amounts to "tail wagging the dog" because it was the result of his relevant conduct, and not the conduct that precipitated his arrest, and this conduct was not proved by clear and convincing evidence.

---

[1] The 1.5 kilograms was reached by multiplying one ounce (28.35 grams) by 210 days (approximately 7 months) to arrive at 5,935.5 grams of crack cocaine.

## II. ANALYSIS

Relevant conduct determinations are factual findings that we review with great deference to the district court, reversing only in the case of clear error. *United States v. Carmack*, 100 F.3d 1271, 1276 (7th Cir. 1996).[2] For relevant conduct, the government is required to prove the amount of drugs attributable to a defendant by a preponderance of the evidence. *United States v. Ofcky*, 237 F.3d 904, 908 (7th Cir. 2001). Proving relevant conduct by a preponderance of the evidence requires showing that the conduct was "'more likely than not,' i.e., probable or likely rather than just possible." *United States v. Shannon*, 110 F.3d 382, 401 n.10 (7th Cir. 1997) (en banc) (citing *United States v. Saulter*, 60 F.3d 270, 280 (7th Cir. 1995)).

Here, Johnson's relevant conduct was based on his post-arrest statement that he dealt one ounce of crack cocaine every day for the preceding seven to eight months. Self-incriminating statements such as Johnson's, which was clearly against his penal interest, "have long been considered reliable enough for use at trial . . . , so we cannot say that they are too unreliable for use at sentencing." *United States v. Szakacs*, 212 F.3d 344, 352-53 (7th Cir. 2000). Indeed, we have held that a drug dealer's self-incriminating statement to a drug enforcement agent, which was offered at sentencing solely through the testimony of the agent (as opposed to a written confession or testimony by the dealer), was sufficiently reliable because "[n]o one was more qualified than [the dealer] himself to put a number on

---

[2] "Clear error review means that the district court's decision will not be reversed unless after reviewing the entire record we are left with a definite and firm conviction that a mistake has been committed." *Id.* at 1276 (citing *United States v. Flores-Sandoval*, 94 F.3d 346, 349 (7th Cir. 1996)).

the amounts of cocaine he was purchasing and re-selling." *United States v. Contreras*, 249 F.3d 595, 602 (7th Cir. 2001).

Nothing about Johnson's case makes it different. Like the district court below, we are unpersuaded by Johnson's argument that his heroin addiction makes his statement inherently unreliable. To support his argument, Johnson offered the testimony of Dr. Jonathan Lipman, Ph.D., a neuropharmacologist, who testified that based on his review of Johnson's arrest and hospitalization records, Johnson *may have been* suffering from heroin withdrawal at the time he made the statement and under such circumstances may have been willing to say anything in the hopes of being released and obtaining more drugs to feed his addiction.[3] Johnson also offered the testimony of Andrea Smith, an assistant federal public defender, who said that Johnson appeared to be suffering from severe heroin withdrawal when she met with him two days after his arrest (the day after he made his statement). Johnson, however, did not testify on his own behalf.

The officers who arrested Johnson and took his confession testified that he did not appear to be going through withdrawal at the time he confessed but instead seemed very alert and coherent. They also testified that he stated he wanted to cooperate, signed a written waiver of his *Miranda* rights, and read over and corrected his statement (initializing his corrections) before signing it. They further stated that while Johnson was willing to incriminate himself, he was unwilling to give the name of his drug supplier

---

[3] Johnson also submitted a report of Dr. Heidi Israel, Ph.D., who, like Dr. Lipman, did not interview or examine Johnson, but who nevertheless opined that Johnson's possible heroin withdrawal might have caused him to say anything in order to obtain more drugs.

to the interrogating officers. The district court concluded that while the testimony proffered by Johnson was helpful in explaining the progression of opiate withdrawal, it did not override the officers' testimony that Johnson did not appear to be going through withdrawal at the time he made his statement. We accord exceptional deference to a sentencing judge's credibility determinations. *See, e.g.*, *United States v. Johnson*, 227 F.3d 807, 813 (7th Cir. 2000); *United States v. McClinton*, 135 F.3d 1178, 1193 (7th Cir. 1998). And under these circumstances, we cannot say that the district court committed clear error in rejecting Johnson's addiction argument and sentencing him based on his post-arrest statement.

Johnson argues that his sentence amounts to a "tail wagging the dog" because it was his relevant conduct, and not the conduct that precipitated his arrest, that lengthened his sentence from ten years to seventeen and a half years, and that relevant conduct was not proved by clear and convincing evidence. "It is well-established that simply a preponderance of the evidence is all that is required for a factual finding under the Sentencing Guidelines." *United States v. Porter*, 23 F.3d 1274, 1277 (7th Cir. 1994) (citing *United States v. Corbin*, 998 F.2d 1377, 1387 (7th Cir. 1993)). "A higher standard might be called for only in the rare instance where a factual finding will result in a sentencing increase so great that the sentencing hearing can fairly be characterized as a tail which wags the dog of the substantive offense." *Corbin*, 998 F.2d at 1387 (citations and quotation marks omitted). Johnson claims that his case is similar to *United States v. Hopper*, 177 F.3d 824 (9th Cir. 1999), and *United States v. Kikumura*, 918 F.2d 1084 (3d Cir. 1990), in which the Ninth and Third Circuits respectively held that proof by clear and convincing evidence was required in order to substantially enhance a defendant's sentence based on relevant conduct. *See Hopper*, 177 F.3d at 833 (clear and convincing evidence required for increase

from 24-30 months to 63-78 months because of the relative shortness of the unenhanced sentencing range); *Kikumura*, 918 F.2d at 833 (twelve-fold sentence increase, from a range of 27-33 months to a term of thirty years, must be proved by clear and convincing evidence). Our decisions have implicitly agreed with *Kikumura* to the extent that due process considerations may, at some point, require a greater showing for a dramatic increase. Nevertheless, we have approved the preponderance standard in numerous cases in which a defendant's sentence was increased by a factor greater than in *Kikumura* or *Hopper*. *See, e.g.*, *United States v. Rodriguez*, 67 F.3d 1312, 1323 (7th Cir. 1995) (enhancement from 51-63 month range to sentence of life imprisonment); *United States v. Porter*, 23 F.3d 1274, 1277 (7th Cir. 1994) (enhancement from 33-41 month range to 137-month sentence); *United States v. Masters*, 978 F.2d 281, 286-87 (7th Cir. 1992) (enhancement from 33-41 month range to 40-year sentence); *United States v. Schuster*, 948 F.2d 313, 315-16 & n.3 (7th Cir. 1991) (enhancement from 21-27 month range to 5-year sentence). While this list is not exhaustive, it is sufficient to show that the increase in Johnson's sentence is not one of those rare instances in which a higher standard is required.[4]

---

[4] While this case presents a sentence that is less troublesome than those which this court has previously rejected applying a higher standard of proof, the significant increase in Johnson's sentence due to his self-incriminating statement, and the circumstances in which he gave it, underscore the need for the proper exercise of prosecutorial discretion. In this case, we *hope* that the prosecutors exercised this power with an eye toward justice, mindful of the discretion that is essential to the proper functioning of the criminal justice system. *See United States v. Zendeli*, 180 F.3d 879, 886-87 (7th Cir. 1999); *see also United States v. LaBonte*, 520 U.S. 751, 762 (1997).

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*