**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted September 5, 2007[1]
Decided October 10, 2007

**Before**

Hon. FRANK H. EASTERBROOK, *Chief Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 07-1144

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 06 CR 10013 |
| TYRONE L. WILLIAMS, *Defendant-Appellant.* | Joe Billy McDade, *Judge.* |

**O R D E R**

Tyrone Williams entered a guilty plea to conspiracy to produce child pornography. He was sentenced to a term of 360 months in prison, the statutory maximum. Williams now appeals, arguing that the district court mistakenly considered, as relevant conduct, evidence that he gave minors drugs and alcohol to encourage them to have sex with him. Williams also challenges two enhancements that were applied in formulating his advisory guideline range: one for leading and organizing the conspiracy and another for distributing child pornography. Finally,

---

[1] On August 24, 2007, we granted the parties' joint motion to waive oral argument.

he claims that he was wrongly denied a three-level reduction in his guideline range for acceptance of responsibility.

Williams, who was born in 1972 and was in his midtwenties or early thirties during certain times in this case, enjoyed having sex with young teenagers while photographing and videotaping the liaisons. Pleased with his handiwork, he frequently shared the photos and videos with others. One of the girls Williams had sex with was Sarah Smith, whom he met in 1998. She was 12 years old at the time and working, sadly to be sure, as a prostitute.

About five years later, Smith introduced Williams to a 14-year-old girl, "D.B.", whom Smith had taken under her wing. Smith asked Williams to teach D.B. how to "act" like a prostitute. Williams had sex with D.B. on more than 100 occasions, usually after giving her drugs and alcohol. He photographed and videotaped these encounters, storing the images on his computer's hard drive, a flash drive, and compact discs.

Sometime in 2004, Williams and Smith (who was now 18 years old) met several other young girls ranging in age from 12 to 16. Some of these girls went to Williams' home for alcohol and marijuana. He then, often, had sex with them.

In December 2004, Williams took D.B. and Smith to the home of Douglas Evans and Rocky May. There, D.B. posed in several pictures, including one of D.B. exposing her breasts and another of D.B. and Williams simulating sexual acts.

Later that day, Williams drove Smith and D.B. to meet two of his cousins, Robert and Kevin Williams. After picking up Robert and Kevin at their apartment, Williams drove the entire group to a nearby Bloomington, Illinois, motel, where he paid cash for a room for the night.

In the crowded motel room, Williams (and Robert) gave D.B. alcohol and marijuana. Williams also took explicit pictures and videos of D.B., during which he played director, instructing others to pose for the camera.

Williams recorded various scenes: Smith performing oral sex on D.B.; Williams having sex with D.B. while passing a marijuana cigarette; a nude D.B., Smith, and Williams, with Williams kissing Smith and D.B.'s breasts; Robert kissing D.B.'s breasts; and Kevin naked in the shower with Smith and D.B.

On March 28, 2005, Williams and D.B. stayed another night in a Bloomington motel. Williams gave D.B. alcohol and marijuana, had sex with her,

and instructed her to pose in several pictures and videos.  These included photographs and videos of D.B. exposing her breasts.  Williams also videotaped D.B. wearing only underwear, doing a handstand.  On the video, Williams repeatedly asks D.B. to stand on her head and thrust her genitals up and down.  D.B. did as directed.

On April 23, 2005, D.B. went to Williams' home, where Williams took pictures of D.B. exposing her breasts.  Williams also photographed and videotaped D.B. dancing provocatively.

In December 2005, D.B., Williams, and his 15-year-old son, D.J., gathered at the home of Brian Isaac, where Williams then lived.  Williams directed everyone to pose for the camera.  He instructed Isaac to rub D.B.'s genitals over her pants and rub her breasts over her shirt.  Isaac also had sex with D.B.  Williams took pictures of D.J. having sex with D.B., D.B. exposing her breasts, and D.B. and Williams having oral sex.  One image depicted D.B. wiping her face after Williams had ejaculated.

In mid-January 2006, Bloomington police received an anonymous tip about Williams' activities with underage girls.  After executing a search warrant for Williams' home, the police found a digital camera, video camera, computer, compact discs, and videotapes.  They also found three videotapes and at least twenty images of child pornography.  This led to his indictment in federal court on numerous counts.  After pleading guilty to the conspiracy count, which covered a one-year period ending in December of 2006, several other counts were dismissed.

At Williams' sentencing hearing, after ruling on the parties' objections, the district court concluded that Williams' offense level was 47.  With a criminal history category of III, the statutory maximum sentence for the offense--360 months--became the advisory guideline sentence.  See USSG § 5G1.1(a).  That sentence was then imposed.

Williams first argues that the district court should not have considered, as relevant conduct, evidence that he provided alcohol and drugs to several minors (other than D.B.) to encourage them to have sex with him.[2]  We review relevant

_____

[2] As the government notes, it is unclear to what extent the court's consideration of this conduct affected Williams' sentence.  This information was not used to calculate Williams' offense level or to determine any specific offense characteristics.  It is possible, however, that the district court denied Williams an acceptance of responsibility adjustment, in part, because he denied that he provided alcohol to minors.

conduct determinations for clear error.  United States v. Johnson, 342 F.3d 731, 734 (7th Cir. 2003).

At sentencing, Williams identified as irrelevant to the offense of conviction--conspiracy to produce child pornography--information in paragraph 11 of the presentence report (PSR), which says that "[s]ometime in 2004," Williams and Smith met seven minors (other than D.B.).  According to the PSR, Williams provided many of these minors with alcohol and drugs to encourage them to have sex with him.

Because Williams never objected to the accuracy of this information before the district court, we need not consider his current argument that the government presented insufficient evidence to support a finding that he was involved with other minors.  See United States v. Barevich, 445 F.3d 956, 958 (7th Cir. 2006) (defendant's concessions about relevant conduct limited his claims on appeal).

According to paragraph 11 of the PSR, Williams met seven minors in 2004.  It is unclear, however, when exactly he gave these minors drugs and alcohol and attempted to seduce them.  This question is important because, under USSG § 1B1.3(a)(1)(A), relevant conduct must have taken place during one of three periods:  the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.  According to the indictment, the facts of which Williams could not contest after entering his guilty plea, United States v. Tolson, 988 F.2d 1494, 1500 (7th Cir. 1993), the conspiracy began  "in or about December, 2004" and continued "through in or about December, 2005."

Thus, only if Williams' involvement with these minors took place during the conspiracy--roughly between December 2004 and December 2005--can these activities be considered relevant conduct.  Williams' testimony at sentencing cleared up the ambiguity in the PSR.

Williams testified that in December 2005, he hosted several children at his home:

    Q:    How many children are in your house?
    A:    Yes.
    Q:    How many children?
    A:    It was my son, my nephew, D.B., and my son and friends.
    Q:    And about six other kids, Bianca; right?
    A:    Yes.

Williams further testified that, during this gathering, he took nude photos of T.W., one of the minors identified in paragraph 11 of the PSR.

In ruling on Williams' objection, the district court concluded that Williams' own testimony established that "there w[ere] other minor girls that [Williams] was involved with besides DB."

From the combination of paragraph 11 of the PSR and Williams' testimony at sentencing, the district court could properly conclude that Williams did, in fact, seduce minor children (other than D.B.) during the period of the conspiracy. As a result, the district court did not clearly err in identifying as relevant conduct Williams' involvement with minors other than D.B.

Williams next argues that the district court mistakenly enhanced his guideline range by two levels under USSG § 2G2.1(b)(3) for distributing material involving the sexual exploitation of a minor.

At the sentencing hearing, Williams argued that images of D.B.'s exposed breasts and of Williams licking D.B.'s exposed breasts did not reflect conduct serious enough to constitute "sexual exploitation of a minor." As a result, he argued, these photos cannot form the basis of the distribution enhancement.

In response, the government told the court that another photo was much more graphic: it depicted Smith and D.B. engaged in oral sex. A witness, Bloomington Police Officer Michael Fazio, confirmed this description.

Williams' counsel acknowledged that a photo depicting oral sex between Smith and D.B. would, in fact, reflect "sexual exploitation" that could properly serve as the basis for a distribution enhancement. Williams' counsel, however, argued that because his version of the photo was blacked out, he could not determine whether the photo depicted "simulated or real" oral sex.

The government then volunteered to show Williams' attorney an untouched version of the photo. Williams' counsel responded that "[he didn't] need to see it." Instead, the attorney suggested that"[they] just put [the photograph] in the record and . . . let the Court decide."

Based on the government's proffer and Officer Fazio's testimony, the district court adopted the probation officer's position and imposed the two-level enhancement. The photo was introduced into evidence at the conclusion of the hearing.

First, we disagree with the government that, by requesting that the court rule on the content of the photo, Williams' counsel waived Williams' right to appellate review of this issue. The government is correct that Williams' counsel represented at sentencing that "if the photograph in fact depicted oral sex being performed on a minor, . . . [then] the enhancement would apply."

Waiver principles, however, are construed liberally in favor of the defendant. United States v. Ortiz, 431 F.3d 1035, 1038 (7th Cir. 2005). We interpret the suggestions of Williams' counsel--that the photo be admitted into evidence and that the court make its factual finding on the content--as statements relating to procedure. Through these statements, Williams communicated his decision not to make his own proffer to the court, cross-examine Officer Fazio, or introduce other evidence relating to the photo's content. Nowhere, however, does Williams' counsel communicate an intention to abandon Williams' right to an appellate review of the court's factual finding. See id.

Since Williams has preserved his right to challenge the court's factual findings relating to the photo, we may now turn to the argument Williams makes on appeal. He contends that "unless the photo shows an act of oral intercourse as represented, rather than a mock pose, . . . this enhancement does not apply." But whether that claim is right or wrong is immaterial because the district court was on solid ground when it concluded--based on the government's proffer, Officer Fazio's corroborating testimony, and no conflicting evidence--that the untouched version of the photo reflected Smith performing real, not simulated, oral sex on D.B. Thus, the district court properly enhanced Williams' sentence by two levels for distributing material involving Smith's sexual exploitation of D.B.

In his next challenge, Williams contends that the district court erred in enhancing his guideline range by four levels under USSG § 3B1.1(a) for leading or organizing a criminal activity involving five or more people. Whether a defendant served in a leadership capacity is a finding of fact that we review for clear error. See United States v. Reneslacis, 349 F.3d 412, 416 (7th Cir. 2003).

Williams first claims that the conspiracy did not involve at least five people, nor was it "otherwise extensive." At sentencing, Williams argued that because the court should not count the minor victims as "participants," the magic number of five was not met.

Unfortunately for Williams, the number five is very much alive. In his brief, Williams shoots himself in the foot by acknowledging that he and four other adults--

Sarah Smith, Kevin Williams, Robert Williams, and Brian Isaac--participated in one of two "sex parties" in December 2004 and December 2005.

Additionally, according to the PSR, two other adults, Evans and May, were involved in the conspiracy. Because Williams counts as a "participant," United States v. Schweihs, 971 F.2d 1302, 1318 (7th Cir. 1992), the total number of participants is seven. Thus, because the conspiracy involved over five participants, we need not consider whether D.B. and other minors can be properly added to this total. The district court correctly imposed the leadership enhancement.

Williams' second challenge to the district court's application of the leadership enhancement requires no arithmetic. Williams denies that he directed and controlled others to participate in the conspiracy. We disagree.

In assessing whether Williams was a leader or organizer of the conspiracy, we consider his exercise of decision-making authority, the nature of his participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree he participated in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority he exercised over others. See USSG § 3B1.1 cmt. n.4.

It is clear that Williams was the bellwether of this operation. He recruited accomplices, including his own cousins. Williams was the common denominator of each of the sex parties. He played the role of "director," frequently instructing those present to pose for the digital camera and video camera, both of which he owned. Williams also claimed the fruits of the crime--the sexually explicit photos and videos, some of which he posted on his Web site. Because Williams "marshall[ed] other individuals for the purpose of executing the crime," United States v. Wasz, 450 F.3d 720, 730 (7th Cir. 2006), the district court properly labeled him a leader or organizer of the conspiracy.

Lastly, Williams argues that he accepted responsibility for his participation in the conspiracy and, as a result, deserved a downward adjustment in his range under USSG § 3E1.1(a).

When the probation officer recommended, in the PSR, that Williams get an acceptance of responsibility credit, the government initially had no objection. After Williams "frivolously and falsely" objected to certain facts in the PSR, however, the government objected to the downward adjustment. The government argued that by

contesting certain facts relating to his participation in the crime, Williams disavowed his responsibility for the conspiracy.

The district court agreed with the government and denied Williams an acceptance of responsibility adjustment. The court emphasized that Williams downplayed the magnitude of his conduct and denied that he gave liquor and marijuana to minors.

On appeal, Williams argues that he did, in fact, acknowledge responsibility for his role in the conspiracy. He asserts that he admitted that he both supplied marijuana to minors and "facilitated" the minors' consumption of alcohol.

While Williams consistently admitted that he provided marijuana to minors, he acknowledged only that he indirectly facilitated the use of alcohol. By falsely denying or frivolously contesting relevant conduct that the district court determined was true, Williams acted in a manner inconsistent with acceptance of responsibility. See USSG § 3E1.1 cmt. n.1(a); see also United States v. Leahy, 464 F.3d 773, 791-92 (7th Cir. 2006).

Moreover, the district court properly concluded that Williams minimized the magnitude of his conduct. During his allocution, Williams stated that he "accept[ed] everything that [he] did." In the same breath, however, Williams suggested that his conduct was harmless, stating that "[he] basically [didn't] consider [himself] as trying to make a grown man or a grown woman do something that they [sic] don't want to do." Williams also suggested that he played an unremarkable role in the conspiracy, complaining that "everybody pointed [him] out like [he was] the bad guy" and that "[he didn't] consider [him]self [to be] a ring leader."

Thus, the district court properly denied Williams the acceptance of responsibility adjustment.

For these reasons, the judgment of the district court is AFFIRMED.