In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-1099

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

AYIKO L. PAULETTE,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Southern District of Illinois.
No. 14-CR-30152-NJR-01 — **Nancy J. Rosenstengel**, *Judge*.

ARGUED MARCH 1, 2017 — DECIDED MAY 30, 2017

Before POSNER, SYKES, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Ayiko Paulette helped found the
Waverly Crips street gang in East St. Louis, Illinois, during
the late 1980s and early 1990s. By 2012 he and the gang were
trafficking large amounts of drugs in the area. Before his luck
ran out in 2014, Paulette was leading the gang and managing
its drug trade. He even controlled the sale of illegal drugs in
nearby Washington Park, Illinois, and had many people

working for him. Things unraveled, though, after Paulette sold 105 grams of cocaine to an informant during two controlled buys in May 2014. Two months later, authorities were waiting when Paulette and eight travel companions got off a train in St. Louis. They were returning from a supply run to Texas. Seven of them were carrying a total of 2.4 kilograms of cocaine in packages concealed under their clothing.

Paulette eventually pled guilty to eight counts related to drug trafficking and was sentenced to a total of 300 months in prison. He appeals that sentence, focusing on the count charging him with conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 846 and 841(a)(1). Paulette disputes the scope of the conspiracy and argues that the district court, in calculating his imprisonment range under the Sentencing Guidelines, wrongly counted certain years of drug dealing as relevant conduct under U.S.S.G. § 1B1.3. We affirm his sentence.

I.   *Factual Background*

The indictment charged that Paulette and nine others, along with additional unnamed "persons known and unknown," had conspired to distribute controlled substances from January 2007 to July 2014. The conspiracy count specifically alleged that, in addition to heroin, the offense had involved at least five kilograms of cocaine and no less than fifty grams of methamphetamine. Despite pleading guilty, Paulette refused to admit precise drug quantities. He also declined to endorse the government's factual basis detailing its position about the timeframe of the conspiracy and the people involved. During the plea colloquy, Paulette said only that he had "sold drugs" and "violated the law." He did

acknowledge, however, that in the event of trial the government could produce evidence consistent with its version of the facts. He also admitted in his plea agreement that "the amount of cocaine that was involved in the conspiracy … was 5 kilograms or more, and the amount of methamphetamine (actual) that was involved in the conspiracy … was 50 grams or more."

Later, in the presentence report, the probation officer recounted Paulette's long history of drug dealing, including with persons not specifically identified in the indictment. That history included Paulette's regular cocaine sales to Lucille Brim from about May through November 2011, to Paul Barnett from October 2011 through November 2012, and to Joe Garcia in October 2012. Altogether Paulette had sold more than 4.6 kilograms of cocaine to Brim, Barnett, and Garcia. The probation officer also recapped Paulette's methamphetamine dealings from this same timeframe. Paulette had sold Barnett 396 grams of "ice," a highly purified form of methamphetamine, also known as crystal methamphetamine, in several transactions between the summer of 2012 and December 2012. Likewise, during most of 2012 Paulette had trafficked ice with Garcia and Marcus Lewis—more than 1.5 kilograms total. Until September of that year, Paulette had been delivering to Lewis directly, but then he arranged for Garcia to begin supplying the ice. Garcia did so until the following month when he was caught with a quantity of ice and cocaine intended for Lewis and Paulette.

The probation officer also detailed trafficking activity after 2012. That included the March 2013 search of Paulette's house by police officers investigating reports of gunshots in the area. Inside the house the officers found guns, ammunition, and

2.5 grams of cocaine. Also covered in the presentence report were Paulette's sales to Allen Henry, a named co-conspirator. For three months in early 2014, Paulette was providing cocaine to Henry every other day, for a total exceeding 2.4 kilograms. He also supplied 56 grams of heroin to Henry over the course of four deals. And as mentioned above, the activity included two controlled buys of cocaine and the supply run to Texas in 2014.

In calculating the quantity of drugs involved in the conspiracy, the probation officer aggregated the cocaine, ice, and heroin from transactions before 2013 involving Brim, Barnett, Garcia, and Lewis. The probation officer also included amounts from transactions in 2013 and 2014 involving Henry. The probation officer included, too, drugs from the search of Paulette's home, the amounts from the two controlled buys, and the cocaine seized from Paulette's travel companions in July 2014.[1]

In sum, the probation officer concluded, Paulette had trafficked approximately nine kilograms of cocaine, 56 grams of heroin, and 1.9 kilograms of ice. These amounts add up to 40,133 kilograms of "marijuana equivalent," see U.S.S.G. § 2D1.1 cmt. n.8(B), and result in a base offense level of 36.

---

[1] One of those travel companions was a nephew, Akeelan Paulette, whose role as a courier resulted in convictions for conspiracy to distribute controlled substances and traveling interstate in support of racketeering. Akeelan Paulette filed a notice of appeal challenging those convictions, but his appointed lawyer in that case (No. 16-1366) filed a motion asserting that the appeal is frivolous and seeking leave to withdraw from further representation. See *Anders v. California*, 386 U.S. 738 (1967). The two appeals were consolidated, but in light of the *Anders* motion, we decide Akeelan Paulette's case in a separate non-precedential order.

With a total offense level of 43 and a criminal-history category of II, Paulette's guideline sentence would be life in prison.

Paulette objected to including drug amounts from his transactions before 2013 with Brim, Barnett, Garcia, and Lewis. He argued that his trafficking activity with these individuals was not part of or relevant to the charged conspiracy, which Paulette insisted did not begin until 2013. His lawyer conceded at sentencing, however, that Paulette's objection was "general in nature, meant to preserve this record for appellate purposes." The district court overruled the objection, reasoning that Paulette's drug dealing with those four people, which the court characterized as "jointly undertaken criminal activity," was relevant conduct under U.S.S.G. § 1B1.3. The court found that because the indictment charged a conspiracy running from January 2007 to July 2014, "that is the offense of conviction and anything back to then would be appropriately included." After determining that the Guidelines called for life imprisonment, the court exercised its judgment under 18 U.S.C. § 3553(a) and imposed a total sentence of 300 months.

II. *Analysis*

On appeal Paulette maintains that his dealings from 2011 and 2012 involving Brim, Barnett, Garcia, and Lewis should not count as relevant conduct for the drug-trafficking conspiracy. He relies on the premise that, regardless of the allegations in the indictment, he never admitted conspiring to distribute drugs before March 2013 or with anyone other than his named coconspirators—Allen Henry and those with him on the train from Texas. Paulette says that the conspiracy he admitted joining began only in March 2013 when authorities searched his home and found cocaine. He does not dispute that he is accountable for the drug quantities from that period,

which are 5,042 grams of cocaine and 56 grams of heroin, the guideline equivalent of 1,064 kilograms of marijuana. Nor does Paulette dispute that this amount subjects him to an increased statutory minimum sentence, see 21 U.S.C. § 841(b)(1)(A). Nevertheless, counting only this quantity would substantially lower his base offense level and guideline range.

The government argues that Paulette's sentencing challenge should be rejected because his guilty plea amounted to an admission to the truth of every detail alleged in the conspiracy count of the indictment. From that premise, the government reasons that Paulette effectively admitted that the conspiracy spanned the period from 2007 through July 2014, that he conspired with the named co-conspirators as well as "other persons known and unknown," and that he conspired to distribute heroin and certain minimum quantities of cocaine and methamphetamine.

The government's argument reaches too far. A plea of guilty admits only the essential elements of the offense. *United States v. Dean*, 705 F.3d 745, 747 (7th Cir. 2013); *United States v. Kilcrease*, 665 F.3d 924, 929 (7th Cir. 2012). In this case, that means Paulette admitted knowingly agreeing with at least one other person to possess and distribute a controlled substance. See 21 U.S.C. §§ 846, 841(a)(1); *United States v. Garcia*, 580 F.3d 528, 535 (7th Cir. 2009). That is all his guilty plea admitted. Drug type and quantity are not essential elements and need not be proved beyond a reasonable doubt unless the government is seeking enhanced statutory penalties. See *Garcia*, 580 F.3d at 535; *United States v. Bryant*, 557 F.3d 489, 493 & n.4 (7th Cir. 2009); *United States v. Kelly*, 519 F.3d 355, 363 (7th Cir. 2008); *United States v. Martinez*, 518 F.3d 505, 509 (7th Cir.

2008); *United States v. Bjorkman*, 270 F.3d 482, 492 (7th Cir. 2001). The alleged beginning and ending dates of a charged conspiracy also are not elements of the crime. See *United States v. Hatten-Lubick*, 525 F.3d 575, 581 (7th Cir. 2008); *United States v. Spaeni*, 60 F.3d 313, 315 (7th Cir. 1995).

The government relies principally on our opinion in *United States v. Tolson*, 988 F.2d 1494 (7th Cir. 1993), which quoted the Supreme Court to the effect that "a guilty plea is an admission of all the elements of a formal criminal charge," *id*. at 1500, quoting *McCarthy v. United States*, 394 U.S. 459, 466 (1969), but then broadened the language to say that by pleading guilty, the defendant admitted "all the facts in the indictment," including the starting date of the conspiracy. *Id*. at 1501.

But in the two decades since *Tolson* was decided, we have cited it for that more expansive proposition just once, and that was in a non-precedential decision. See *United States v. Williams*, 250 F. App'x 725, 728 (7th Cir. 2007) (reasoning that defendant could not contest starting date of conspiracy after pleading guilty). In other opinions, we have been more careful to distinguish between "elements," without which there is no crime, see *Bjorkman*, 270 F.3d at 492, and factual allegations that while significant, especially for sentencing, are not essential for conviction, see, e.g., *Garcia*, 580 F.3d at 535; *Kelly*, 519 F.3d at 363; *Martinez*, 518 F.3d at 509; *United States v. Henry*, 408 F.3d 930, 934 (7th Cir. 2005).

In fact, less than a year after deciding *Tolson*, we sought to clarify that the passage given such weight by the government here applies "more appropriately to situations where a defendant is challenging an element of the offense … or the facts constituting such elements," and we noted that the decisions

cited in *Tolson* do not support the broader reading. See *United States v. Hernandez*, 16 F.3d 1226, *5–6 (7th Cir. 1994) (non-precedential decision) (rejecting government's contention that defendant's guilty plea admitted drug quantity alleged in indictment). *Hernandez* explained correctly that "for sentencing purposes the factual allegations contained in the indictment are not established irrefutably simply because the defendant pleaded guilty to the indictment." *Id.* at *6.

Despite his effort to minimize his crimes during the plea colloquy, Paulette confessed in his plea agreement to more than just the essential elements of the conspiracy count. A defendant, of course, may admit far more than the elements of a charged crime by stipulating to facts in a plea agreement, by agreeing with the government's factual basis, or even by answering the judge's questions during the plea colloquy. Our decision in *United States v. Savage*, 891 F.2d 145 (7th Cir. 1989), which the government understands to be about the effect of a guilty plea, actually turns on these various types of additional admissions that give context to a guilty plea. See *id.* at 146–47, 149–50.

Like the defendant in *Savage*, Paulette admitted—not through his guilty plea but through his plea agreement—that the conspiracy had "involved" at least five kilograms of cocaine and, more significantly, at least fifty grams of actual methamphetamine. As far as this record shows, Paulette's only methamphetamine transactions occurred before 2013 with people who are not named in the indictment. Those transactions—396 grams of ice sold to Barnett and 1.5 kilograms of ice trafficked with Garcia and Lewis—are linked to the conspiracy by Paulette's admission that the crime "involved" at least fifty grams of that drug. That was enough to

incur a statutory minimum of ten years in prison under 21
U.S.C. § 841(b)(1)(A)(viii). That admission from the plea
agreement is conclusive. See *United States v. Krasinski*, 545 F.3d
546, 552 (7th Cir. 2008); *United States v. Warneke*, 310 F.3d 542,
550 (7th Cir. 2002). The admission undermines Paulette's later
objection at sentencing that he engaged in only a narrower
conspiracy beginning in 2013 with only the people named in
the indictment.

In oral argument Paulette tried to avoid the effect of his
admission about methamphetamine in the plea agreement.
He did not deny being bound by his admission that at least
fifty grams of methamphetamine was trafficked as part of the
charged conspiracy, but his lawyer asserted that the quantity
mentioned in the plea agreement related to never-discovered
transactions different from those documented in the presen-
tence report. Paulette argued that what is documented in that
report—1.9 kilograms instead of just fifty grams—was part of
a separate conspiracy and thus not relevant conduct. This ex-
planation lacks an evidentiary foundation and was not made
to the district court. At the very least, given Paulette's conces-
sion that the charged conspiracy involved methamphetamine
dealing, the district court did not err by incorporating into its
calculation of drug quantity the only evidence of metham-
phetamine dealing known to the court.

That reliance on the admission concerning methampheta-
mine answers Paulette's additional contention that the district
court did not explain adequately how the disputed transac-
tions are relevant conduct. We also are not persuaded that
Paulette's objection to the drug quantity warranted more ex-
planation than the judge gave. Paulette acknowledged that
his objection was "general." He was clearly trying to walk a

fine line: he did not want to risk losing credit for acceptance of responsibility under U.S.S.G. § 3E1.1 by challenging relevant conduct too vigorously.

In this appeal, we have given Paulette the benefit of the doubt and, contrary to the government's view, accepted that he said enough in the district court about the scope of the conspiracy to preserve this claim for appeal. See *United States v. Ortiz*, 431 F.3d 1035, 1038–39 (7th Cir. 2005). But his objection was barely developed; Paulette disavowed the probation officer's assessment of the conspiracy's duration and scope but did not support his position with evidence or even legal analysis. He did not dispute engaging in each drug transaction recounted in the presentence report. Nor did he question the accuracy of the drug quantity assigned by the probation officer to each of those transactions. In this circumstance we will not deem inadequate the district court's explanation that Paulette's regular drug deals from 2011 through 2014 were relevant to the charged conspiracy. Cf. *United States v. Jackson*, 547 F.3d 786, 795–96 (7th Cir. 2008) (declining to remand on basis of district court's explanation for rejecting "scantily developed" sentencing claim of diminished capacity).

We need not pursue the details of Paulette's further arguments about other drug amounts that, like the methamphetamine transactions, he wanted the district court to exclude from the total drug quantity. When the methamphetamine is combined with the cocaine and heroin that Paulette agrees were properly attributed to him, his guideline sentence still is life imprisonment, exactly what the court understood it to be when deciding that 300 months is the appropriate sentence.

AFFIRMED.