| NONPRECEDENTIAL DISPOSITION |
| --- |
| To be cited only in accordance with Fed. R. App. P. 32.1 |

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 24, 2019
Decided February 12, 2019

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-2728

| | |
| --- | --- |
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Western District of |
| | Wisconsin. |
| | |
| *v.* | No. 3:17 CR 00104-001 |
| | |
| JAY'VON FLEMMING, | James D. Peterson, |
| *Defendant-Appellant.* | *Chief Judge.* |

**O R D E R**

Jay'Von Flemming pleaded guilty to bank robbery and to brandishing a firearm during a bank robbery. *See* 18 U.S.C. § 2113(a), (d); 18 U.S.C. § 924(c)(1)(A)(ii). In his plea agreement, Flemming stipulated to committing another robbery a few weeks earlier. At sentencing, the district court found that Flemming used a firearm during the earlier robbery and, accordingly, applied a six-level enhancement for using a firearm in connection with the offense. *See* U.S.S.G. § 2B3.1(b)(2)(B). On appeal Flemming challenges this enhancement and maintains that the gun he used during that offense was fake. But because the district court did not clearly err, we affirm.

In October 2017, Jay'Von Flemming and Kenny Furdge, armed with a pair of 9mm handguns, robbed the Home Savings Bank in Stoughton, Wisconsin. They made it out of the building with $136,000 and fled by car. Law enforcement officers quickly identified their vehicle and, after unsuccessfully attempting to pull them over, took up pursuit. The resulting high-speed chase ended when Flemming and Furdge crashed into a signpost, ditched the vehicle, and tried to escape on foot. They were quickly apprehended.

In his plea agreement, Flemming not only pleaded guilty to one count of aggravated bank robbery and one count of brandishing a firearm, *see* 18 U.S.C. § 2113(a), (d), but also stipulated to robbing Bank Mutual in Portage, Wisconsin a month earlier. During that Portage robbery, Furdge later told law enforcement, Flemming possessed an unloaded .40 caliber Glock. Surveillance footage from the Portage robbery shows Flemming holding what appears to be a black handgun, apparently by the muzzle. A witness also reported seeing Flemming with a pistol, adding that the gun looked so large that it might have been fake.

The probation officer explained her sentencing recommendations in the PSR. For the Stoughton robbery (count 1), she assessed an offense level of 28: starting from a base offense level of 20, she added multiple enhancements, including two levels for robbing a financial institution, two levels for directing victims at gunpoint, two levels for the loss amount, and two levels for reckless creation of substantial risk while fleeing law enforcement. For the Portage robbery, the probation officer assessed an offense level of 32: from a base level of 20, she added two levels for robbing a financial institution, six levels for pointing a gun at and threatening to shoot victims, two levels for directing victims to assist at gunpoint, and two levels for the loss amount. Because there were multiple offenses, the probation officer added a two-level adjustment to the highest offense level (the Portage robbery, offense level 32). *See* U.S.S.G. § 3D1.4. Finally, after subtracting three points for acceptance of responsibility, the probation officer determined that Flemming's total offense level was 31. The probation officer also noted that count 2—brandishing a firearm in furtherance of a crime of violence—required a seven-year minimum sentence, to be served consecutively. *See* 18 U.S.C. § 924(c)(1)(A)(ii); U.S.S.G. § 2K2.4.

Flemming objected to the offense level calculation for the Portage robbery, arguing that the gun enhancements were inappropriate because the evidence suggested that the gun Flemming used was a fake. First, Flemming argued that the only evidence that the gun was real was Furdge's "conclusory statement" that he had used a .40

caliber Glock during that robbery. He then pointed to the witness statement that the gun "was so large that it looked fake possibly," as well as to the surveillance photo showing him holding the gun "like it [were] a prop."

At the sentencing hearing, the district court overruled Flemming's objection. The court found "compelling" Furdge's statement that Flemming brought an unloaded .40 caliber Glock to the robbery, in large part because it was a statement against Furdge's own interest ("it affected his sentence"). The court was also persuaded by Flemming's use of a real firearm to rob a different bank just a few weeks later. The court considered the countervailing evidence—including the witness statement and the photograph—but found it unconvincing. The court concluded that Flemming used a real gun that met the definition of a firearm under U.S.S.G. § 1B1.1. The district court then adopted the guidelines calculations set forth in the PSR, arriving at a range of 135 to 168 months. The court sentenced Flemming to the top of that range—14 years—for count 1 and 7 years for count 2, to be served consecutively.

On appeal, Flemming essentially renews his overruled objection, arguing that the Portage robbery firearm enhancement was improper because he did not use a real gun. He bifurcates his argument artificially, assigning fault first to the government (for not responding to his objections, for not calling witnesses at the hearing, and for not making any arguments to support the firearm enhancement) and then to the court (for committing clear error in finding, without any proof, that the gun was real).

Only the second argument is at issue: whether the district court erred when it found, by a preponderance of the evidence, that Flemming possessed a real firearm during the Portage robbery. *See United States v. O'Brien*, 560 U.S. 218, 224 (2010) (sentencing factors can be proved by a preponderance of the evidence.). We review findings of fact "with great deference to the district court, reversing only in the case of clear error." *United States v. Johnson*, 342 F.3d 731, 734 (7th Cir. 2003). Under clear error review, we will reverse only if, after examining the record, we are "left with a definite and firm conviction that a mistake has been committed." *Johnson*, 342 F.3d at 734 n.2.

Flemming suggests that the district court committed such a mistake when it accepted Furdge's assertion that the gun was real. But the district court did not clearly err when it interpreted "unloaded .40 caliber Glock" to mean "*real* unloaded .40 caliber Glock." The government provided enough evidence—Furdge's statement, the actual guns used in the Stoughton robbery, and the photograph—to support the district

court's finding. The evidence does not appear to compel an opposite result, so we will not disturb the district court's ruling.

AFFIRMED